1998 SD 27

Michael WAGAMAN, Claimant
and Appellant,

v.

SIOUX FALLS CONSTRUCTION,
Employer and Appellee,

and

Liberty Mutual Insurance Group,
Insurer and Appellee.

Nos. 20078, 20082.

Supreme Court of South Dakota.

Argued Jan. 15, 1998.

Decided March 18, 1998.

Michael Abourezk and Alicia D. Garcia of Abourezk Law Office, Rapid City, for claimant and appellant.

Timothy M. Gebhart, Mark W. Haigh, and Susan Jansa Brunick of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for employer, insurer, and appellees.

MILLER, Chief Justice.

[¶ 1.]Michael Wagaman appeals the circuit court's affirmance of the Department of Labor's decision denying him workers' compensation benefits. Sioux Falls Construction and its insurer, Liberty Mutual Insurance Group (hereinafter referred to individually or collectively as Employer), appeal the finding

by Department that Wagaman's injury was work related. We affirm.

**FACTS**

[¶ 2.]Wagaman was employed as a heavy laborer and driver by Sioux Falls Construction. He suffered an injury to his right shoulder on June 15, 1992, when he fell off a truck he was washing. He went to his supervisor nine days after the accident and was then sent to Central Plains Clinic. He was diagnosed as having a "winged scapula." [1] He continued to work until June 30, 1992, when he was taken off of work by a doctor.

[¶ 3.]Wagaman claimed he had pain in his shoulder and stayed off of work from June 30 until September 30, 1992. Dr. Entwistle saw him in August, 1992 and also diagnosed him as having a winged scapula. He took Wagaman off of work for a month and arranged for a work-hardening program at Sioux Valley Hospital. Wagaman began that program on September 28, 1992, but was released to return to work after two days because he claimed he was asymptomatic.

[¶ 4.]Wagaman returned to his old job, but was laid off on November 4, 1992, because of a lack of work. About four weeks later, he went hunting. He subsequently started feeling pain again and went back to see Dr. Entwistle on November 30, 1992. Dr. Entwistle noted that although there may be some winging, it was not a natural progression of the original injury and, therefore, something else must have aggravated it. Wagaman returned to Dr. Entwistle on December 10, 1992, at which time an EMG was performed, the results of which were normal.

[¶ 5.]Dr. Entwistle next saw Wagaman on January 13, 1993, and placed him in another work-hardening program. A functional capacities assessment (FCA) was also performed as part of that program. It was determined by the FCA that Wagaman was capable of earning a living with sustained gainful employment. He was released to work again on January 21, 1993.

1. A "winged scapula" is a condition in which a shoulder blade protrudes in the back because of muscle weakness.

[¶ 6.]Wagaman saw Dr. Entwistle on several occasions until April 26, 1993. He planned on returning to work with Sioux Falls Construction on May 2, 1993, but they would not take him back because of earlier problems he had with a foreman. He returned to Dr. Entwistle for the last time on May 5, 1993. Dr. Entwistle said the winged scapula was not really an issue; the real issue was whether there was nerve damage. He noted no nerve damage at that time.

[¶ 7.]Wagaman began seeing Dr. Cho on June 15, 1993. Dr. Cho diagnosed a long thoracic nerve lesion and sent him to a work-hardening program at McKennan Hospital. He was later released from the program because he was not making any progress, was noncompliant, and was not following recommendations. In August of 1993, another FCA was performed on Wagaman which placed him in the sedentary work range.

[¶ 8.]In November of 1994, Dr. Robert Suga, an orthopedic surgeon, performed an independent medical examination on Wagaman. Dr. Suga opined that Wagaman's current condition was not related to his work injury, but was rather the result of degenerative changes in his spine.

[¶ 9.]Wagaman next saw Dr. Bean, a psychiatrist, who diagnosed him with a probable psychological somatoform disorder.[2] Dr. Bean speculated that the hunting incident may have triggered the somatoform disorder, however, he also opined that Wagaman was still employable despite his physical and psychological conditions.

[¶ 10.]Wagaman sought either total disability benefits under the odd-lot doctrine, or loss of use benefits under our decision in *Cozine v. Midwest Coast Transport, Inc.*, 454 N.W.2d 548 (S.D.1990). Department found that Wagaman's present condition is causally related to his work injury, but denied him benefits because he was employable. The circuit court affirmed.

[¶ 11.]Wagaman appeals, claiming:

I. Department erred in determining Wagaman was not permanently and totally disabled.

II. Department erred in determining Wagaman was not entitled to *Cozine* benefits.

By notice of review, Employer appeals, claiming:

Department erred in determining that Wagaman's condition is causally related to his work injury.

## STANDARD OF REVIEW

[¶ 12.]Our standard of review in workers' compensation cases requires us to give great weight to the findings and inferences made by Department on factual questions. *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225 (citing *Helms v. Lynn's, Inc.*, 1996 SD 8, ¶¶ 9–10, 542 N.W.2d 764, 766; *Finck v. Northwest Sch. Dist. No. 52–3*, 417 N.W.2d 875, 878 (S.D. 1988)). Under SDCL 1–26–37, when the issue is a question of fact then the clearly erroneous standard is applied to the agency's findings; however, when the issue is a question of law, the actions of the agency are fully reviewable. *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2, ¶ 6, 557 N.W.2d 764, 766 (citing *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992); *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991)). When reviewing agency findings, we will reverse only if, after careful review of the entire record, we are definitely and firmly convinced a mistake has been made. *Sopko*, 1998 SD 8, ¶ 6, 575 N.W.2d at 228 (citing *Spitzack v. Berg Corp.*, 532 N.W.2d 72, 75 (S.D.1995)) (other citations omitted). We review findings based on deposition testimony and documentary evidence under a de novo standard of review. *Hanten v. Palace Builders, Inc.*, 1997 SD 3, ¶ 8, 558 N.W.2d 76, 78 (citing *Caldwell*, 489 N.W.2d at 357).

## DECISION

[¶ 13.]I. **Whether Department erred in determining that Wagaman's present con-**

---

**2.** A somatoform disorder, in its general sense, is a psychological disorder where the person suffering from it experiences pain to a greater degree than someone who does not suffer from it. The pain symptoms cannot be fully explained by a general medical condition, and are generally more prominent when they serve a purpose for the person suffering from the disorder.

dition is causally related to his work injury.

[¶ 14.]We will consider Employer's notice of review issue first because, if it is determined that there is no causal relationship between Wagaman's condition and the work injury, then further analysis is unnecessary.

[¶ 15.]Before Wagaman can collect workers' compensation benefits he must establish a causal connection between his injury and his employment. *Caldwell*, 489 N.W.2d at 357. It is not necessary to prove his employment was the proximate, direct, or sole cause of his injury, but only that it was a contributing factor to the injury. *Id.* at 358 (citing *Sudrla v. Commercial Asphalt & Materials*, 465 N.W.2d 620, 621 (S.D.1991)) (other citations omitted); *see also Tischler v. United Parcel Serv.*, 1996 SD 98, ¶ 27, 552 N.W.2d 597, 602. "Issues of causation in workers' compensation cases are factual issues that are best determined by the Department." *Therkildsen v. Fisher Beverage*, 1996 SD 39, ¶ 8, 545 N.W.2d 834, 836 (citations & internal quotations omitted).

[¶ 16.]Employer argues Department incorrectly determined that Wagaman's condition is causally related to his work injury. Department relied on the opinion of Dr. Cho to make a finding as to causation. Employer claims that Dr. Cho's opinion must be discounted for three reasons. First, Dr. Cho stated Wagaman had a long thoracic nerve injury and a resultant winged scapula. Employer claims that the reports of Drs. Entwistle and Suga show there was no evidence of a winged scapula in 1993 or 1994, and that Wagaman was fully recovered from any nerve injury. Second, it is claimed that Dr. Cho's opinion should be discounted because it is inconsistent with the EMG nerve conduction studies performed on Wagaman. Third, there is evidence that Wagaman's complaints of pain are consistent with a degenerative cervical problem as diagnosed by Dr. Suga.

[¶ 17.]Department relied on Dr. Cho's opinion because she was involved with Wagaman early in his therapy and was also the last physician to examine him in 1995. Dr. Cho noted a long thoracic nerve injury and winged scapula. She also stated that it was possible that the EMG would not show the injury and that other EMG's should have been performed.

[¶ 18.]Because the issue of causation in this case is not clear, the testimony of a medical expert is necessary. *Howe v. Farmers Coop. Creamery*, 81 S.D. 207, 212, 132 N.W.2d 844, 846 (1965); *see also Hanten*, 1997 SD 3, ¶ 10, 558 N.W.2d at 78. When presented with medical expert testimony, Department is "free to accept all of, part of, or none of, an expert's opinion." *Hanson v. Penrod Constr. Co.*, 425 N.W.2d 396, 398 (S.D.1988) (citations omitted). There was testimony from Dr. Cho that Wagaman's condition is work related. Department could rely on Dr. Cho's opinion, even though there was contradictory testimony. Therefore, Department's findings on this issue were not clearly erroneous, and we affirm.

[¶ 19.]**II. Whether Department erred in determining Wagaman was not permanently and totally disabled.**

[¶ 20.]Wagaman asserts that he is entitled to permanent and total disability benefits under the odd-lot doctrine and Department erred in deciding otherwise. We disagree.

[¶ 21.]The following test is applied to determine if a claimant is qualified for permanent total odd-lot disability: "[A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in insubstantial income." *Shepherd v. Moorman Mfg.*, 467 N.W.2d 916, 918 (S.D.1991) (citations & internal quotations omitted); *Bonnett v. Custer Lumber Corp.*, 528 N.W.2d 393, 395 (S.D. 1995). The burden is on claimants to make a prima facie showing that their physical impairment, age, mental capacity, training, and education place them in the odd-lot category. *Bonnett*, 528 N.W.2d at 395; *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231 (S.D. 1994). Whether a claimant has made a prima facie case that he belongs in the odd-lot total disability category is a question of fact.

*Shepherd,* 467 N.W.2d at 919 (citation omitted).

[¶ 22.]A claimant can establish a prima facie case if it is shown that the claimant is "obviously unemployable." Once this is shown, the burden shifts to the employer to show that suitable employment that will accommodate claimant's limitations is available in claimant's community. *Hendrix v. Graham Tire Co.,* 520 N.W.2d 876, 880 (S.D. 1994) (citing *Shepherd,* 467 N.W.2d at 918). A claimant can establish obvious unemployability by showing either that his physical condition along with his education and training make it obvious that he is in the odd-lot total disability category, or by convincing the trier of fact that he suffers the kind of continuous, severe, and debilitating pain which he claims. *Spitzack,* 532 N.W.2d at 75; *Bonnett,* 528 N.W.2d at 395.

[¶ 23.]Alternatively, a claimant can establish a prima facie case for permanent total disability benefits under the odd-lot doctrine, when the person is not "obviously unemployable," by showing the unavailability of suitable employment based on the claimant's reasonable, but unsuccessful, efforts to find work. *Hendrix,* 520 N.W.2d at 881 (citing *Shepherd,* 467 N.W.2d at 918). If the claimant presents substantial evidence that he is not employable in the competitive market, then the burden shifts to the employer to show that suitable work is available in the claimant's community. *Spitzack,* 532 N.W.2d at 75; *Bonnett,* 528 N.W.2d at 395 (citations omitted).

A. *Obvious unemployability*

[¶ 24.]Wagaman claims that his physical condition in conjunction with his psychological somatoform disorder make him "obviously unemployable." He claims Department did not correctly consider his psychological disorder and the testimony of other witnesses who stated he suffered pain and sleep deprivation.

[¶ 25.]Employer places some emphasis on the fact that Wagaman's somatoform disorder was not caused by his work injury. Such a causal link is not necessary. As noted above, it is only necessary for Wagaman to prove his employment was a contributing factor to his current injury. *Caldwell,* 489 N.W.2d at 358 (citations omitted). Therefore, if his injury in combination with the somatoform disorder render him unable to work, he should recover. However, as will be shown, Wagaman failed to establish a prima facie case that he is entitled to odd-lot benefits.

[¶ 26.]Wagaman's physical condition, in conjunction with his education and training, do not make it obvious that he belongs in the odd-lot category. The testimony of all the physicians, including his own expert, was that he was employable.

[¶ 27.]The crux of Wagaman's argument is that his somatoform disorder places him in so much pain that he is unable to work. As noted above, Wagaman can show obvious unemployability by convincing the trier of fact that he suffers from continuous, severe, and debilitating pain. *Shepherd,* 467 N.W.2d at 919. Here, it is clear Department was not persuaded by Wagaman's claims, so we must look to see if its findings were clearly erroneous.

[¶ 28.]The evidence presented by Wagaman was mostly his own subjective statements of the pain he was feeling. Department evidently did not find him to be a credible witness. There were numerous instances in which Wagaman's credibility was called into question. Different medical notes made in conjunction with Wagaman's treatment indicated he said he had played volleyball and horseshoes after his injury, statements Wagaman now denies making. Wagaman also admitted that he lied to Dr. Entwistle when he told him in 1992 that he felt better and wanted to return to work. There was also testimony that Wagaman said he would lift weights prior to going to therapy in order to make his muscles spasm and tighten up. There was even other testimony on various activities which Wagaman allegedly engaged in and which he now denies.

[¶ 29.]Department is allowed to weigh the evidence and determine the credibility of the witnesses. *Petersen,* 515 N.W.2d at 235. "The Department is not

required to accept the testimony of the claimant and is free to choose between conflicting testimony." *Id.* (citation & internal quotation omitted). There was much evidence to support Department's determination that Wagaman was not a credible witness and, thus, his subjective testimony as to pain could also be determined not to be credible.

[¶ 30.]In *Shepherd*, 467 N.W.2d at 920, we held it would have been significant if there was evidence that a claimant engaged in any activity at odds with his pain or claimed limitations. There was such testimony in this case. In addition to testimony of playing volleyball and horseshoes, there was also testimony that he changed car tires on two different occasions, helped cut down a tree, and helped dig post holes for a fence. Wagaman has gone hunting, fishing, and camping since the time of his injury. He was also involved in several fights and other physical confrontations.

[¶ 31.]Wagaman denies some of the claims and argues that he is only seeking damages starting from December, 1993, and most of the activities he allegedly engaged in occurred before that time. This may be true, however, given the questions as to his credibility, this fact does not establish a prima facie case. It is also significant that Department heard the testimony of James Criger, a bartender. He testified that Wagaman came into the bar where he worked on a regular basis and for lengthy periods from the summer of 1992 until the summer of 1995. Criger never once noticed Wagaman in pain or heard him complain of pain. So while there was testimony that Wagaman suffered severe and debilitating pain, Department was presented with testimony to contradict that.

[¶ 32.]Wagaman claims to suffer from sleep deprivation as a result of his condition and alleges this also makes it impossible for him to work. Again, given the credibility factor with Wagaman, any statements by him as to this assertion may not carry much weight. In fact, Dr. Bean, a psychiatrist, opined that,

based on his examination of Wagaman, he did not believe Wagaman had a sleep disorder.

[¶ 33.]Wagaman relies on the fact that James Carroll, Employer's vocational expert, testified that if Wagaman actually experienced the kind of pain he claimed he would probably be unemployable. Wagaman also discounts the testimony of the medical experts that declared he was employable because they did not consider the somatoform disorder. However, Dr. Bean did consider all the physical and psychological conditions and determined that Wagaman was employable.

[¶ 34.]Wagaman's somatoform pain disorder should be considered along with his work-related injury in determining his right to compensation.[3] However, he has failed to present a prima facie case that he is obviously unemployable despite the somatoform disorder and Department was not clearly erroneous.

### B. *Reasonable, unsuccessful efforts to find employment*

[¶ 35.]Department determined that Wagaman did not establish a prima facie case that he made reasonable, but unsuccessful, efforts to find work. We agree.

[¶ 36.]The only evidence as to a job search presented by Wagaman was that in 1993, he worked with the State Department of Vocational Rehabilitation to find employment. It was determined that Wagaman could work at a sedentary level and he was placed in a position at a convenience store. After only a day in that position, Wagaman had to leave because of pain he was feeling.

[¶ 37.]Wagaman's one attempt at reentering the work force does not constitute a reasonable effort, especially in light of the fact that his subjective complaints of pain have been called into question based on his credibility. Wagaman has made no effort to

3. Wagaman argues that it was an error for Department to find his somatoform disorder was not related to his injury. However, there was much evidence to support such a finding. Also, this does not mean Department was requiring a connection between the injury and the somatoform disorder in order for Wagaman to recover. In fact, Department made specific findings as to the disorder, and ultimately relied on Dr. Bean's opinion that the disorder coupled with the injury did not render Wagaman unemployable.

search for work since 1993 and has not tried to enter the work force or rehabilitate himself in any manner.

[¶ 38.]Wagaman has failed in his burden to present a prima facie case for odd-lot total disability benefits and, thus, the burden never shifted to Employer to show that employment opportunities existed for him. Department and circuit court are affirmed on this issue.

### [¶ 39.]III. Whether Department erred in denying Wagaman *Cozine* benefits.

[¶ 40.]Wagaman argues that, even if Department did not err in denying benefits under the odd-lot doctrine, it did err in denying him benefits for loss of use under our decision in *Cozine*.

[¶ 41.]"SDCL 62–4–6 specifies the amount of compensation an employee shall receive for the loss of a part of the body or its loss of use. The clear language of this statute directs that compensation shall be paid for loss of use." *Tischler*, 1996 SD 98, ¶ 49, 552 N.W.2d at 605 (quoting *Caldwell*, 489 N.W.2d at 361) (other citations & internal quotations omitted). It is for Department to determine "if, and to what extent, a claimant has suffered the loss of use of a part of the body." *Cozine*, 454 N.W.2d at 551–52. Factors such as a medical impairment rating, testimony of vocational experts, and other testimony must be considered to determine loss of use. *Tischler*, 1996 SD 98, ¶ 49, 552 N.W.2d at 605. "[A] disability rating due to a loss of use of a body member can ... only be considered in the context of what effect it would have on the employee's income-earning capability[.]" *Id.*, 1996 SD 98, ¶ 50, 552 N.W.2d at 605 (quoting *Caldwell*, 489 N.W.2d at 362) (internal quotations omitted).

[¶ 42.]Wagaman's vocational expert, Rick Ostrander, testified to Department that Wagaman had a loss of income of thirty-eight percent.[4] Department rejected Ostrander's opinion because he did not consider certain factors in making his determination of a thirty-eight percent loss. Some factors not considered by Ostrander were Wagaman's felony conviction [5] and also that Wagaman had received a job offer from the Sioux Falls School District.[6]

[¶ 43.]It is Department's duty to choose between conflicting expert testimony. *Hanson*, 425 N.W.2d at 398. Likewise, an expert's opinion is entitled to no more weight than the facts upon which it is based. *Hanten*, 1997 SD 3, ¶ 10, 558 N.W.2d at 78. Given Department's ability to judge the credibility of the witnesses, we cannot say it was clearly erroneous in denying Wagaman *Cozine* benefits. There was no clear error in rejecting Ostrander's opinion, so all that was left was the opinion of Carroll that there were several jobs available for Wagaman that paid a similar wage to what he was earning before his injury. In other words, there was no evidence to establish a loss of use rating for Wagaman and Department's decision is affirmed.

[¶ 44.]Affirmed.

[¶ 45.]SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

4. Ostrander and Employer's expert, Carroll, testified live in front of Department. Therefore, such testimony is not entitled to a de novo review.

5. Wagaman argues that the failure to consider the felony conviction should not be a basis for rejecting Ostrander's opinion, because the felony conviction actually makes it harder for Wagaman to get a job and, therefore, his loss-of-use rating would be even higher. While this may be true, it ignores the fact that Ostrander did not have a complete picture of Wagaman's employability, and, thus, the basis for his opinion is flawed. The circuit court made a credibility determination and we cannot say it was clearly erroneous in doing so.

6. Wagaman did not get the job because he failed a drug test.