2002 SD 27

**Marie DAVIDSON, n/k/a Marie Myklegard, Claimant and Appellant,**

v.

**HORTON INDUSTRIES, INC., Employer and Appellee,**

and

**Sentry Insurance, Insurer and Appellee.**

**No. 21970.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 13, 2001.

Decided Feb. 27, 2002.

Rehearing Denied April 16, 2002.

Ronald J. Hall of Siegel, Barnett & Schutz, LLP, Aberdeen, South Dakota, for claimant and appellant.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, for appellees.

SABERS, Justice.

[¶ 1.] Marie Davidson, n/k/a Myklegard (Davidson), appeals from a decision denying an award of workers' compensation benefits. We reverse and remand.

## FACTS

[¶ 2.] Davidson began working for Horton Industries in 1987. Horton Industries (Horton) makes fan clutches for trucks and buses. Davidson worked in several areas while employed with Horton. She was initially employed as a janitor, then moved into an accounting position. In September 1993, Davidson began working on the as-sembly floor putting together repair kits. In February or March of 1994, Davidson began working in the final assembly area. At the time of this claim, Davidson was employed in the final assembly area. This job involved assembling fan clutches and lifting and manipulating weights in excess of sixty pounds.

[¶ 3.] On May 10, 1994, while lifting a clutch part, Davidson experienced pain in her neck and right shoulder. Davidson informed her supervisor and left work. On May 11, Davidson was examined by Dr. Purintan who diagnosed right parascapular strain and inflammation. Dr. Purintan prescribed medication and recommended a course of physical therapy. He further recommended that Davidson return to light duty work. In June 1994, Davidson returned to work for four to six hours per day.

[¶ 4.] Davidson's pain did not improve. In September 1994, Horton's insurer appointed a nurse case manager to Davidson to assist in her treatment and return to work. The case manager noted Davidson's complaints of constant tingling in her right arm and hand, burning in her shoulder, and sharp radiating pains in her neck. The case manager arranged for Davidson to be examined by another doctor.

[¶ 5.] Throughout 1994, she was referred to numerous physicians, including Dr. MacDougall, an orthopedic surgeon, Dr. Malek, a neurosurgeon, Dr. Quinlan, an upper extremity orthopedic specialist, and Dr. Blow, a physiatrist, all of whom diagnosed her with chronic arm, shoulder and neck pain related to overuse. The physicians prescribed varying courses of medication and physical therapy and recommended only light work duty. Davidson, however, still did not improve.

[¶ 6.] During this same time period, Horton and its insurer offered to have

Davidson examined at the Mayo Clinic. Two of Davidson's physicians also recommended that she attend a pain clinic, which her employer also offered to pay for. Davidson refused, mostly for personal reasons.

[¶ 7.] On January 24, 1995, Davidson went to the emergency room with severe neck and right shoulder pain where she was treated by Dr. Small. Davidson later returned to see Dr. Small who noted that Davidson had a limited range of motion and experienced extreme tenderness in her right shoulder. Dr. Small recommended that Davidson not work and referred her to an orthopedic surgeon, Dr. Johnson, at the request of her attorney. Horton did not authorize the visit to Dr. Johnson.

[¶ 8.] Dr. Johnson examined Davidson on February 7, 1995, and diagnosed her with myofascial pain disorder. Dr. Johnson recommended that she undergo a functional capacity evaluation (FCE). In late February, the FCE was completed at Sioux Valley Hospital. The FCE indicated that Davidson could perform a light-medium level of work, but should avoid repetitive use of her upper right extremity.

[¶ 9.] In May 1995, Dr. Quinlan approved a position for Davidson in Horton's repair kit area. Horton offered her a job in this area, but she refused the offer based on a recommendation from Dr. Johnson. As a result of her refusal to work, Davidson's temporary disability benefits were terminated after May 23, 1995.

[¶ 10.] In April 1996, Horton arranged for Davidson to be examined by Dr. Bengston at the Mayo Clinic. Dr. Bengston diagnosed her with chronic right shoulder myofascial pain syndrome. He recommended that she avoid repetitive activity involving her right shoulder and concluded that she had reached her maximum medical improvement. He further concluded

that her permanent partial disability would be zero-percent. On April 22, 1996, Horton and its insurer again terminated Davidson's temporary disability benefits.

[¶ 11.] Horton again offered Davidson a position in the repair kit area and she returned to work on May 30, 1996. After approximately thirty minutes of work, she left, complaining of pain. Davidson returned to see Dr. Small who recommended no further work.

[¶ 12.] In September 1996, Davidson underwent another FCE at the Mayo Clinic. The second FCE showed greater restrictions than the first one and indicated she should not do repetitive activities with her upper right extremity. Dr. Bengston assigned Davidson a five-percent impairment rating and stated that she had reached maximum medical improvement. Horton's insurer paid out the benefits available to her under this rating and cut off all weekly benefits.

[¶ 13.] On September 25, 1996, Horton and its insurer arranged for an independent medical exam by Dr. Tountas. After his exam, Dr. Tountas was unable to identify any underlying condition causing Davidson's pain. He further stated that Davidson could return to full-time work without any restrictions and that she did not have any permanent partial disability.

[¶ 14.] In October 1996, Horton made Davidson another offer to return to work in the repair kit area. Davidson attempted to return to work in January 1997, but left work after less than one hour because of pain.

[¶ 15.] Davidson filed a petition for hearing with the Department of Labor, Division of Labor and Management (Department) on September 21, 1995, seeking an award of all available workers' compensation benefits, including medical, temporary total disability, permanent partial dis-

ability and Cozine benefits and permanent total disability benefits under the odd-lot doctrine. A hearing was held before the Department, on November 5 and 6, 1997. On February 12, 1999, the hearing examiner found against Davidson, denying her claim for workers' compensation benefits. On March 26, 1999, the hearing examiner entered findings of fact, conclusions of law and an order and judgment. The hearing examiner's findings and conclusions stated that Davidson was not a credible witness and failed to support her claim for benefits with objective medical findings.

[¶ 16.] On April 7, 1999, Davidson filed a petition for review with the Secretary of Labor. The Secretary affirmed. Davidson then appealed her claim to the Fifth Circuit. Davidson filed briefs almost one year later and requested that the circuit court remand the case to the Department for reconsideration of its decision in light of new and material evidence. The circuit granted the motion to remand, but the Department determined that the new evidence was not material and had no impact on its original decision. The circuit court then affirmed the decision of the Department in its entirety on April 10, 2001 and entered judgment on April 16, 2001.

## STANDARD OF REVIEW

■ [¶ 17.] This Court's standard of review for workers' compensation cases is well established:

We have often stated that " '[u]nder SDCL 1–26–37, when the issue is a question of fact, then the clearly erroneous standard is applied to the agency's findings; however, when the issue is a question of law, the actions of the agency are fully reviewable.' " *Brady Mem'l Home v. Hantke*, 1999 SD 77, ¶ 8, 597

N.W.2d 677, 679–80 (quoting *Wagaman v. Sioux Falls Constr.*, 1998 SD 27, ¶ 12, 576 N.W.2d 237, 240 (citations omitted)). Under our review, "we are required to give 'great weight to the findings and inferences made by Department on factual questions.' " *Id.* (citations omitted). Further, " '[i]f after careful review of the entire record we are definitely and firmly convinced a mistake has been committed, only then will we reverse.' " *Id.* (additional citations omitted).

*Belhassen v. John Morrell & Co.*, 2000 SD 82, ¶ 11, 613 N.W.2d 531, 535.

[¶ 18.] **WHETHER THE DEPARTMENT ERRED IN DETERMINING CLAIMANT WAS NOT ENTITLED TO WORKERS' COMPENSATION BENEFITS, INCLUDING MEDICAL, TEMPORARY TOTAL DISABILITY, PERMANENT PARTIAL DISABILITY AND COZINE BENEFITS AND PERMANENT TOTAL DISABILITY BENEFITS UNDER THE ODD–LOT DOCTRINE.**

■ [¶ 19.] This Court has stated that when the issue presented " 'is a question of law, the actions of the agency are fully reviewable.' " *Belhassen*, 2000 SD 82 at ¶ 11, 613 N.W.2d at 535 (quoting *Brady Mem'l Home*, 1999 SD 77 at ¶ 8, 597 N.W.2d at 679–80). For all the reasons stated herein, the Department erred in its findings of fact and conclusions of law. It is simply not right when seven doctors basically give a diagnosis of chronic right shoulder myofascial pain syndrome and reach a prognosis that claimant should not work for a period of time, for the hearing examiner to ignore such evidence in favor of a very brief independent medical exam conducted by a physician hired by the claimant's employer.[1] It is not enough to

---

1. There is some dispute as to the length of the examination. In his deposition, Dr. Tountas

claimed that he saw Davidson for "at least 30 minutes." At the hearing, Davidson testified

ignore the substantial evidence of pain because the cause cannot be determined. While we recognize that an agency may disregard one expert's opinion in favor of another, it cannot disregard the similar opinions of numerous medical experts in favor of one expert hired by the insurer under these circumstances. Upon review of the entire record, we are firmly convinced that the Department's action constitutes error in a conclusion of law. Because we believe basic errors have been made by ignoring seven similar medical reports, Davidson was denied a fair hearing and we reverse and remand.

[¶ 20.] Furthermore, in this case, a significant portion of the expert testimony was presented by means of deposition, affidavit and exhibit. This Court has stated that "[w]hen reviewing evidence presented by deposition, we do not apply the clearly erroneous rule but review that testimony as though presented here for the first time." *Foltz v. Warner Transp.*, 516 N.W.2d 338, 340 (S.D.1994) (quoting *Day v. John Morrell & Co.*, 490 N.W.2d 720, 723 (S.D.1992)) (citations omitted). *See also, Truck Ins. Exchange v. CNA*, 2001 SD 46, ¶ 6, 624 N.W.2d 705, 708 (stating this Court reviews "findings based on deposition testimony and documentary evidence under a de novo standard of review"). In *Foltz*, this Court reversed the Department of Labor's denial of workers' compensation benefits because it disagreed with the Department's review of the evidence. 516 N.W.2d at 346–47. The Department supported its denial of benefits by relying solely on the deposition testimony of the employer and insurer's medical experts and ignoring the opinions of three other medical experts. *Id.* at 346. Accordingly, this Court reversed the Depart-

ment with a direction to enter judgment in favor of the claimant. *Id.* at 347.

[¶ 21.] This case presents a similar issue. The key issue is whether Davidson established unemployability because of her pain. This issue is dependent upon both the credibility of Davidson and the medical evidence offered to support her claims of pain. The Department denied an award of workers' compensation benefits because it found that Davidson was "not a credible witness." The Department stated that Davidson "has not established that she is obviously unemployable due to continuous, severe and debilitating pain. In fact, there is no basis in the record to explain Claimant's significant pain complaints." In the Department's findings of fact, the examiner focused primarily on the deposition testimony of Horton's expert Dr. Tountas, who claimed he was unable to reach a diagnosis as to Davidson's condition because of lack of objective findings.

[¶ 22.] The findings of fact contain little about the hearing testimony of Dr. Small, and nothing about the sworn affidavits from Dr. MacDougall, Dr. Johnson, and Dr. Blow. Again, the Department stated that the "weight of the medical testimony" indicated "there is no basis in the record to explain Claimant's significant pain complaints." We disagree. Our review of the record reveals there is evidence supporting Davidson's claims of pain. In their sworn affidavits, Dr. MacDougall, Dr. Johnson and Dr. Blow stated they believed Davidson suffered from myofascial pain disorder to the upper right extremity caused by repetitive overuse. Merely because these physicians were unable to readily ascertain the cause of Davidson's pain does not justify ignoring their sworn statements.

that Dr. Tountas spent only 15–20 minutes with her, and only 5–10 minutes on the physical exam.

[¶ 23.] This Court has stated that "a claimant purporting to suffer from continuous and debilitating pain must be credible, and any medical diagnosis based on an inaccurate and incomplete medical history cannot insulate a claimant from the Department's findings." *Schneider v. South Dakota Dep't of Transp.*, 2001 SD 70, ¶ 14, 628 N.W.2d 725, 730. In *Schneider*, a plurality Court upheld a decision by the Department of Labor which rejected the claimant's and medical expert's testimony as incredible because the claimant gave an incomplete representation of his injuries. 2001 SD 70 at ¶ 16, 628 N.W.2d at 730. *Schneider* is clearly distinguishable from the case at hand. Davidson has not presented a medical diagnosis "based on an inaccurate and incomplete medical history." She has not made inconsistent statements concerning her medical history. Rather, her case is based on the medical testimony of several doctors all of whom basically agree that she suffers from myofascial pain syndrome. Furthermore, the insurer's doctor stated that he did not question the opinions of Davidson's treating doctors and did not believe that she was malingering or faking or that she suffers no pain.

[¶ 24.] The Department also claims Davidson's testimony regarding her pain is not credible because of surveillance videotapes showing her engaging in certain activities such as weed pulling in her garden and carrying items with her right arm. With respect to these videotapes, the Department stated that "Claimant is shown moving with ease and at no time does she appear to be in any physical discomfort." Another videotape of Davidson shows her performing the duties of her job in the repair kit area on January 30, 1997. The Department again states that "it is impossible to accept Claimant's testimony that she was experiencing such extreme pain after viewing the video." Davidson, however, was unable to continue this work after less than one hour.

[¶ 25.] The Department's reliance on these tapes is questionable. *See Foltz*, 516 N.W.2d at 346 (questioning the Department of Labor's reliance on surveillance tapes and determining that they were of little consequence in assessing claimant's credibility). At the hearing, Davidson readily admitted to engaging in weed pulling and grocery shopping, but stated that she had to continue with some normal daily activities despite the pain. Moreover, this Court further questions the Department's reliance on these videotapes, because after reviewing them, we were unable to find any activity demonstrating significant use of Davidson's upper right extremity.[2] Attacking Davidson's credibility on the basis of a few videotapes which provide only brief glimpses of activities which she admits to doing is insufficient to counter the medical testimony of Dr. Small, Dr. MacDougall, Dr. Johnson and Dr. Blow. The medical conclusion of myofascial pain syndrome reached by these four physicians was not substantially challenged by Horton at the time of the depositions or by these videotapes.

[¶ 26.] The hearing examiner failed to support its finding that Davidson's testimony is not credible with any substantial evidence. In *Johnson v. Albertson's*, this Court upheld a hearing examiner's determination that claimant's testimony was incredible. 2000 SD 47, ¶¶ 24–27, 610 N.W.2d 449, 455. This Court concluded that there was "substantial evidence to support the determinations of the hearing

---

**2.** In fact, when reviewing these tapes, other than the return-to-work video, the Court was only able to find one instance where Davidson was seen using her right arm. The majority of the tapes showed only panoramic views of Davidson's house, car and garden.

examiner and the Department that [claimant] was not a credible witness and, thus, her subjective testimony as to pain could also be determined not to be credible." *Id.* at ¶ 26. The hearing examiner found that there was evidence that claimant was malingering, that there was a discrepancy between claimant's injury and the objective findings, that claimant failed to comply with her prescribed treatment, and that her testimony at the hearing conflicted with statements made at earlier dates. *Id.* at ¶¶ 27–33. Because of the substantial evidence in the record, this Court stated that the hearing examiner was correct in rejecting the expert opinions of five doctors who supported the claimant's complaints of injury. *Id.* at ¶ 25. This Court agreed "with the hearing examiner's finding that since [claimant] was lacking in credibility and because 'the opinions of [claimant's] expert witnesses regarding her condition were based in large part on what she told them, the opinions of those experts lack an adequate foundation.' " *Id.*

■ [¶ 27.] Again, the *Johnson* case is clearly distinguishable from the one at hand. The hearing examiner's determination that Davidson is incredible is not supported by substantial evidence. Furthermore, the opinions of Davidson's experts were not based merely on Davidson's complaints of pain and cannot be said to lack an adequate foundation. Because the Department does not support its determination that Davidson's testimony is incredible, it cannot justifiably reject the expert opinions of numerous doctors in favor of one hired by the insurer under these circumstances.

■ [¶ 28.] The burden of proof in workers' compensation cases lies with the claimant. The " 'claimant has the burden of proving all facts essential to compensation[.]' " *Phillips v. John Morrell & Co.,*

484 N.W.2d 527, 530 (S.D.1992) (quoting *King v. Johnson Bros. Constr. Co.,* 83 S.D. 69, 73, 155 N.W.2d 183, 185 (1967)). This Court has stated that:

> Having recognized the burden of proving all the essential facts of his claim is on the claimant, it becomes necessary to evaluate the evidence to determine whether the claimant has in fact met this burden. It should be noted proof need not arise to a degree of absolute certainty, but an award may not be based upon mere possibility or speculative evidence.

*Foltz,* 516 N.W.2d at 342 (citing *Mehlum v. Nunda Coop. Ass'n,* 74 S.D. 545, 546, 56 N.W.2d 282, 283 (1952)). Expert medical testimony couched in terms of probability is sufficient to sustain a workers' compensation claimant's burden of proof. *Hanten v. Palace Builders, Inc.,* 1997 SD 3, ¶ 15, 558 N.W.2d 76, 80.

[¶ 29.] Davidson presented evidence to prove facts essential to compensation under workers' compensation law. The Department erred when it ignored this evidence. We conclude for all of the reasons stated above that Davidson was denied a fair hearing. Because Davidson has made a prima facie showing, the burden now shifts to the employer to show that some form of suitable work is regularly and continuously available to the claimant. *See Kester v. Colonial Manor of Custer,* 1997 SD 127, ¶¶ 28–30, 571 N.W.2d 376, 381 (holding that after claimant establishes prima face case of disability, the burden shifts to the employer to show that some suitable work is available). Accordingly, we reverse and remand for proceedings consistent with this opinion.

[¶ 30.] GILBERTSON, Chief Justice, and GORS, Acting Justice, concur.

[¶ 31.] AMUNDSON and KONENKAMP, Justices, dissent.

AMUNDSON, Justice (dissenting).

[¶ 32.] It is clear from this Court's precedent that due regard should be given to a fact finder's credibility determination, and we should respect the opinions of those who have seen, firsthand, the demeanor of witnesses. *See Schneider,* 2001 SD 70 at ¶ 14, 628 N.W.2d at 728; *Johnson,* 2000 SD 47, ¶ 22, 610 N.W.2d 449, 453–54; *Mathis v. Mathis,* 2000 SD 59, ¶ 11, 609 N.W.2d 773, 776; *Belhassen,* 2000 SD 82 at ¶ 17, 613 N.W.2d at 536; *Hendricksen v. Harris,* 1999 SD 130, ¶ 7, 600 N.W.2d 180, 181; *Kurtz v. SCI,* 1998 SD 37, 576 N.W.2d 878, 882; *Petersen v. Hinky Dinky,* 515 N.W.2d 226, 235 (S.D. 1994); *Foltz,* 516 N.W.2d at 347 (Amundson, J., dissenting), *Wendel v. Domestic Seed & Supply,* 446 N.W.2d 265, 270 (S.D. 1989). Moreover, it is not this Court's job to search for reasons to reverse a lower court's decision. *See S.D. Subsequent Injury Fund v. Cas. Reciprocal Exch.,* 1999 SD 2, ¶ 25, 589 N.W.2d 206, 211 (finding this Court should not search for reasons to reverse); *Fenner v. Trimac Transp., Inc.,* 1996 SD 121, ¶ 15, 554 N.W.2d 485, 489 (stating "[w]e do not look for reasons to reverse, even if we would not have made a similar decision ... but confine our review to a determination of whether the record contains substantial evidence to support the agency's decision"); *Peterson v. Beck,* 537 N.W.2d 375, 379 (S.D.1995) (finding this Court should not "search out" reasons for reversal, but rather, should confine its review to determine if there is evidence to support the lower court's decision).

[¶ 33.] A review of the record in this case shows the following findings of fact entered by the administrative law judge:

11. After Dr. Quinlan examined Claimant, Employer and Insurer offered to have Claimant examined at the Mayo Clinic. Claimant refused that request.

15. Dr. Blow also recommended Claimant attend a pain clinic. Dr. Quinlan made a similar recommendation several months earlier. Claimant refused to attend a pain clinic even though Insurer offered to pay for the program.

17. Dr. Small referred Claimant to Dr. Philip Johnson, an orthopedic surgeon in Fargo, North Dakota. This referral was at the request of Claimant's attorney. Dr. Small noted: "I have been in touch with [Claimant's] attorney and he also wants a second opinion from an out of state physician."

22. In May 1995, Dr. Quinlan was provided with a two-page analysis describing the duties for a job in the repair kit area. Dr. Quinlan approved the position for Claimant[. O]n May 15, 1995, Claimant received a job offer from Employer to work in this position, but refused to return to work based on a note from Dr. Johnson.

24. Employer and Insurer arranged for Claimant to be seen at the Mayo Clinic in April 1996. Dr. Keith Bengtson examined Claimant. That physical examination was totally normal except for a "slightly decreased" range of motion and tenderness of the right shoulder and neck. Dr. Bengtson diagnosed chronic right shoulder group myofascial pain syndrome. He suggested Claimant refrain from repetitive activity with the right upper extremity, but otherwise agreed with the FCE performed by Sioux Valley Hospital. On April 19, 1996, Dr. Bengtson wrote, "I agree that [Claimant] has reached maximum medical improvement. Her permanent partial disability would be 0% according to AMA guidelines."

34. In addition, Dr. Tountas noted Claimant did not have any neck or

upper back spasm. Dr. Tountas stated he expected Claimant's "right arm to be small given the fact that she demonstrated limited motion with pain complaints and pain over a period of over two years." Dr. Tountas explained:

> Well, if the pain were of sufficient magnitude so that the patient can hardly use the upper extremity to any degree, then one would expect either visible atrophy—that is, you frequently can see wasting of muscles if you look at a hand or extremity—or if it's a subtle change, then you should be able to measure it. And again, this is done by just taking a tape measure. And I've done this thousands of times. And you can compare one with the other and get an idea as to whether there is an atrophy or wasting of the muscle that would account for the inability to use it; that is, the disuse.

However, in this case, Dr. Tountas did not find any evidence of atrophy as to Claimant's right upper extremity.

36. Based on his examination, Dr. Tountas was unable to reach a diagnosis as to Claimant's condition. Dr. Tountas opined "the objective findings do not support a diagnosis." Dr. Tountas stated:

> There may have been some references to [trigger points or muscle spasms], but I don't find those to be consistent enough to explain this very bizarre, nonanatomic sensory deficit.... I also find that in FCEs, we do have a great deal of exaggerated pain behavior. There has been no objective testing for a diagnosis that can account for this much pain....
>
> So I, therefore, feel that there are insufficient findings to make this a

diagnosis which causes this much disability or any impairment or inability to work.

In fact, Dr. Tountas could not find any anatomical reason for Claimant's pain complaints.

37. Employer again offered Claimant a job in the repair kit area. This position included receptionist duties and was within the restrictions set by the FCE done at the Mayo Clinic.

39 All the doctors agree that objective tests reveal nothing that can explain Claimant's complaints of pain. Under SDCL 62–1–15, "evidence concerning any injury shall be given greater weight of supported by [sic] objective medical findings." No such support exists here.

41. Employer presented surveillance videos showing Claimant engaged in certain activities. The videos show Claimant pulling weeds in her garden and at other times, carrying items with her right arm. Claimant is shown moving with ease and at no time does she appear to be in any physical discomfort.

42. In addition, when Claimant attempted to return to work on January 30, 1997, in the repair kit area she was videotaped performing the duties of the job. Claimant was able to work at her own pace and moved with ease. Claimant did not show any outward signs of pain. Claimant was instructed that she should get up and move around every twenty minutes. Claimant testified that her return to work effort "didn't go very well" and she had to leave after approximately forty minutes. It is impossible to accept Claimant's testimony that she was experiencing such extreme pain after viewing the video.

43. Every physician who treated Claimant before Dr. Small, including three specialists, felt she was capable of working. Claimant then saw Dr. Small, who took her off work. Not only has Claimant not returned to work since, she has not returned to any of the doctors who said she could go back to work.

48. Claimant is not a credible witness. Despite the majority's finding that the *Johnson* case is distinguishable, I find it very much on point. As the findings of fact above demonstrate, there was "substantial evidence to support the determinations of the hearing examiner and the Department that [Davidson] ... was not a credible witness, and, thus, her subjective testimony as to pain could also be determined not credible[,]" just like in *Johnson*. 2000 SD 47 at ¶ 26, 610 N.W.2d at 455.

[¶ 34.] The majority, in part, bases its decision on the fact that Davidson presented medical testimony of "several doctors" who agree Davidson suffers from a pain syndrome. But, every physician who treated Davidson prior to Dr. Small, including three specialists, felt she was capable of working. Thus, we should not emphasize the number of experts acknowledging Davidson experienced pain; but rather, we should look at whether it incapacitated her. Furthermore, it is a "long-accepted premise ... that the purpose of expert testimony is to assist the trier of fact and not to supplant it." *Id.* at ¶ 25. "Experts do not determine credibility." *Id.* We should focus on whether the record "definitely and firmly" demonstrates that the Department has made a mistake. *Belhassen,* 2000 SD 82, ¶ 11, 613 N.W.2d 531, 535 (citation omitted). It has not. Further, the expert testimony reviewed in this case "cannot rise above its foundation." *Schneider,* 2001 SD 70 at ¶ 16, 628 N.W.2d at 730 (quoting *Johnson,* 2000 SD 47 at

¶ 25, 610 N.W.2d at 455) (other citations omitted). "The value of the opinion of an expert witness is no better than the facts upon which they are based." *Id.* The Department held that the facts fed to the medical experts originated from a non-credible source. Therefore, I cannot join the majority opinion which has sought out reasons to reverse an administrative decision that I feel is firmly supported by the record. This might be a case where I would personally have chosen a different decision, but that is not the purpose of appellate review.

[¶ 35.] KONENKAMP, Justice, joins this dissent.