2001 SD 56

**WATERTOWN COOP. ELEVATOR AS-SOCIATION, License No. 05–004833–ST, 14–005973–ST, 14–006274–ST, 14–006572–ST, 14–007590–ST, 18–003130–ST, 18–003131–ST, Appellee,**

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE, Appellant.**

Farmers Union Oil Co. (Wecota/Faulk-ton/Onaka) License No. 25–001–46–215815E–ST–001, 25–002–46021581E–ST–001, Appellee,

v.

**South Dakota Department of Revenue, Appellant.**

No. 21570.

Supreme Court of South Dakota.

Considered on Briefs Jan. 8, 2001.

Decided May 2, 2001.

Rehearing Denied June 8, 2001.

Robert C. Riter, Jr. of Riter, Mayer, Hofer, Wattier & Brown, Pierre, South Dakota, for appellees.

Mark Barnett, Attorney General, Pierre, South Dakota, Harvey M. Crow, Jr., Special Assistant Attorney General, Depart-

ment of Revenue, Rapid City, South Dakota, for appellant.

KONENKAMP, Justice.

[¶ 1.] In this administrative proceeding, we (1) review the timeliness of the appeal, (2) decide whether charges for providing production specialists may be taxed as payments for "services" under SDCL 10–46–2.1, and (3) examine a finding by the circuit court classifying as arbitrary the Secretary of Revenue's decision. We conclude that the appeal is timely, and we reverse the circuit court's ruling that the charges were not taxable.

### Background

[¶ 2.] Watertown Coop. Elevator Association and Farmers Union Oil Co. (the taxpayers) sell agronomy products to farmers and ranchers. These products include seed, feed, fertilizer, and chemicals. Cenex/Land O'Lakes Agronomy Company and Harvest States Cooperative distribute the products at wholesale to the taxpayers. As part of a separate contract with the taxpayers, these distributors provide production specialists to advise the taxpayers' customers on which products to buy and how best to use them. The contract states that the distributor will "assign a Crop Production Specialist (CPS) to [the taxpayers] to provide services."[1] At all times the Crop Production Specialist or Livestock Production Specialist remains an employee of the distributor. The taxpayers reimburse the distributors for all actual expenses of the production specialists, including salary, social security, income tax withholding, workers' compensation, equipment leases, travel, and other incidental expenses.

[¶ 3.] The production specialists spend eighty percent of their time in the field making contact with farmers and ranchers, attempting to sell agronomy products. Orders taken by the specialists are processed through the taxpayers' retail businesses. Specialists advocate the sale of only their particular distributor's products. While in the field, they gather information concerning soil or livestock and make recommendations about particular products. They may also monitor the use of these products, make return visits, and assist a farmer or rancher in developing a management program, including a profit analysis. The taxpayers do not charge their customers a separate fee for these services. Instead, the cost of maintaining the production specialist program is built into the purchase price of their products.

[¶ 4.] The taxpayers benefit by having "professional salespeople highly trained that [can] help them sell their products at the local [level]. . . ." Since the production specialist's job objective is to increase the sale of products, the specialist works to enlarge the taxpayers' customer base and to maintain and service current accounts. The emphasis of this program is to sell a higher volume of product, which, benefits the taxpayers and the distributors.

[¶ 5.] The Department of Revenue conducted a sales and use tax audit of the taxpayers' books and records. The audit of Watertown Coop. Elevator's books covered September 1993 through August 1996. Afterwards, the Department issued a certificate of assessment finding a use tax due on fees Watertown Coop. paid for production specialist services. The audit of Farmers Union Oil Co. covered the same period with the same result. Both companies paid the entire assessment but

---

1. This particular language is excerpted from the Cenex/Land O'Lakes Crop Production Specialist Agreement. The taxpayers offered testimony that the Harvest States and Cenex production specialist programs were "carbon copies" of one another.

contested the validity of the use tax.[2] As these appeals have similar facts and issues, they were consolidated. Following an administrative hearing, the hearing examiner issued a ruling favorable to the taxpayers.[3] The examiner's findings were submitted to the Secretary of Revenue for review. The Secretary rejected the proposed findings as authorized by SDCL 1–26D–6 and substituted his own findings, conclusions, and final decision.

[¶ 6.] The taxpayers received notice of entry of the Secretary's decision on July 12, 1999. On August 4, the taxpayers' counsel filed a notice of appeal in the Hughes County Circuit Court and charged the filing fee to the account counsel's firm maintained with the clerk's office. The clerk of courts later billed counsel's firm. The billing was completed beyond the thirty-day deadline allowed for appeals. The Department moved to dismiss, arguing that the appeal was not perfected within thirty days of notice of entry under SDCL 1–26–31. The motion was denied. The court heard the case on its merits and found that the Secretary acted arbitrarily in rejecting the hearing examiner's findings without giving adequate reasons in writing. *See* SDCL 1–26D–8. In so ruling, the court found that the Secretary "failed to give proper deference to the hearing examiner's decision and ... findings as to the credibility of witnesses and resolution of conflicts in the evidence." The court found that the services rendered by production specialists were "directly related to the sale of the taxpayers' products" and thus are exempt because the sales of agronomy products are exempt. The Department appeals.

### 1. Timeliness of Appeal

■ [¶ 7.] The Department moved the circuit court to dismiss the taxpayers' appeal, claiming that it was not perfected within the thirty-day period provided for in SDCL 1–26–31. Specifically, the Department asserted that the practice of charging the filing fee to a law firm's account at the clerks' office does not perfect an appeal unless payment is actually made within the thirty day appeal period. The Department anchors its claim on our holding in *Hansen v. South Dakota Board of Pardons and Paroles*, 1999 SD 135, 601 N.W.2d 617. We review the grant or denial of a motion to dismiss as a legal question, asking, "is the pleader entitled to judgment as a matter of law?" *White Eagle v. City of Fort Pierre*, 2000 SD 34, ¶ 4, 606 N.W.2d 926, 928 (citations and internal quotations omitted).

[¶ 8.] In *Hansen* an inmate mailed his notice of appeal to the Minnehaha County Clerk of Court's Office. The notice did not include the filing fee or an application for waiver of the fee. *Hansen*, 1999 SD 135, ¶ 2, 601 N.W.2d at 618. The clerk refused to file the appeal and returned the notice to an attorney who was on contract to assist inmates. *Id.* at ¶ 3. An amended appeal was presented to the clerk along with an application for waiver of the fee; however, it was presented outside the thirty-day appeal deadline. *Id.* We held that under SDCL 1–26–31 an appeal is "not perfected unless and until the filing fee or appropriate waiver is deposited with the clerk of the circuit court." *Id.* at ¶ 8.

■ [¶ 9.] In *Hansen*, obviously, the inmate did not maintain an account with the clerk of courts. Consequently, he was required to deposit the "filing fee or ap-

---

2. Other tax liability revealed in the audit was not contested.

3. For reasons unclear in the record, the hearing examiner had the matter under advisement for sixteen months before issuing a decision.

propriate waiver" along with his notice of appeal. *Hansen,* 1999 SD 135, ¶ 8, 601 N.W.2d at 619. This case is distinguishable. It is common practice for law firms to maintain an account with the clerk and charge fees to that account. A charge to a firm's account at the time of filing is equivalent to depositing a fee. We decline to interpret *Hansen* as requiring attorneys to draw and deposit a check each time an appeal is filed. Thus, the filing of the notice of appeal on August 4, 1999, along with the charge to the account perfected the taxpayers' appeal within the thirty-day deadline.

## 2. Services Subject to Use Tax

▃▃▃ [¶ 10.] Our standard of review in an administrative appeal is governed by SDCL 1–26–36. We give deference to the agency on factual matters, applying the clearly erroneous standard of review. *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228 (citations omitted). When factual determinations are made on the basis of documentary evidence, however, we review the matter *de novo* unhampered by the clearly erroneous rule. *Kurtz v. SCI,* 1998 SD 37, ¶ 10, 576 N.W.2d 878, 882. *But see* SDCL 15–6–52(a) (as amended effective July 1, 2000). "Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by [the] Department [of Revenue] or the circuit court." *Dep't. of Revenue v. Sanborn Tel. Co-op.*, 455 N.W.2d 223, 225 (S.D.1990) (citing *Mid-continent Broadcasting Co. v. Dept. of Revenue*, 424 N.W.2d 153, 154 (S.D.1988)) (bracketed text in original). Statutes allowing tax exemptions are exactingly and narrowly construed in favor of the taxing entity. *Matter of State & City Sales Tax Liability of Quality Service Railcar Repair Corp.*, 437 N.W.2d 209, 211 (S.D. 1989).

▃▃▃ [¶ 11.] The Department identifies two separate transactions between the distributors and the taxpayers: one providing for the assignment of production specialists for a fee, a taxable service under SDCL 10–45–4, and another involving the sale of tax exempt agronomy products for resale.[4] The taxpayers dispute this interpretation, insisting that the service is an "inextricable part" of the sale of exempt agronomy products. *See* SDCL 10–45–4.1. The Department seeks to impose a use tax on the service as authorized by SDCL 10–46–2.1.[5] It argues that since the distributors did not collect sales tax when providing the taxpayers with production specialist services, such services are subject to

4. SDCL 10–45–4 provides:
   There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered. Any service as defined by § 10–45–4.1 shall be taxable, unless the service is specifically exempt from the provisions of this chapter.

5. The Department also argues in its brief that this activity is specifically taxable under SDCL 10–45–5.2. This section enumerates certain services described in the Standard Industrial Classification Manual as specifically taxable. The Department claims that these production specialist services are "help supply services" in Major Group 73. We will not address the applicability of this section because it was never argued before the administrative agency. We refrain from addressing matters brought for the first time on appeal. *Grand State Property, Inc. v. Woods, Fuller, Shultz, & Smith,* 1996 SD 139, ¶ 19, 556 N.W.2d 84, 88 (citations omitted). Likewise, the Department failed to propose a specific finding to the circuit court that the production specialist position was taxable under SDCL 10–45–5.2. The burden was on the Department to demand a ruling on this issue. *Jameson v. Jameson,* 1999 SD 129, ¶ 25, 600 N.W.2d 577, 583 (citations omitted).

use tax. *See generally Sanborn*, 455 N.W.2d at 225.

■▬▬▬ [¶ 12.] A sales tax is imposed "upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered." SDCL 10–45–4. Services are defined in SDCL 10–45–4.1 and are presumed taxable unless specifically exempted. *Id.*

> "Service" means all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service as distinguished from selling property. In determining what is a service, the intended use, principle objective or ultimate objective of the contracting parties shall not be controlling. For purposes of this chapter services rendered by an employee for his employer are not taxable.

SDCL 10–45–4.1. As required by this statute, we use the predominant activity test in deciding if services were subject to sales tax. *See Nash Finch Co. v. South Dakota Dept. of Revenue*, 312 N.W.2d 470, 472 (S.D.1981). *Accord EG & G, Inc. v. Director of Revenue*, 94 N.M. 143, 607 P.2d 1161, 1164 (N.M.App.1979) ("predominant ingredient" test).[6] We have also emphasized that "determinations of taxability should focus on the transaction." *Sioux Falls Newspapers, Inc. v. Secretary of Revenue*, 423 N.W.2d 806, 809 (S.D.1988). Here, the dispositive transaction occurred with the distributors and the taxpayers, not with the ultimate sale of agronomy products or in providing production specialist services to farmers and ranchers.

[¶ 13.] From our review of the record, the distributors and the taxpayers were engaged in two distinct transactions. The taxpayers signed a "crop production specialist program agreement" to participate in the program. In this contract, the distributors agreed to "recruit, hire, and train each CPS." In turn, the taxpayers agreed to reimburse the distributors for one hundred percent of the specialists' salaries and expenses. A representative of the distributors testified that the reason for such an arrangement was that local cooperatives "couldn't attract the kind of personnel [needed] to compete in the marketplace." Furthermore, he conceded that the program was very similar to that of an employment agency. These activities may increase product sales, but they are sufficiently distinct from the sale of agronomy products to be classified as a separate service.

[¶ 14.] The taxpayers contend that because the cost of the production specialist program is recovered through their profit margin that it constitutes only one transaction. Yet, countless business expenses may be recovered through a retailer's profit margin, some wholly unrelated to the sale of tangible personal property. We conclude that the production specialist program involves "predominantly the performance of a service as distinguished from selling property." *See* SDCL 10–45–4.1. Consequently, use tax may be properly imposed on the payments for those services under SDCL 10–46–2.1.

---

6. The operative language of the "Crop Production Specialist Program Agreement" states that the specialist will "provide services." The governing statute, SDCL 10–45–4.1, provides: "In determining what is a service, the intended use, principal objective or ultimate objective of the contracting parties shall not be controlling." Assuredly, the ultimate purpose of the crop production specialist program is to maximize sales of agronomy products. But that can be said of almost every service provided to a business: maximize sales. That is apparently why the Legislature directed that the "ultimate objective of the contracting parties is not controlling."

### 3. Rejection of Hearing Examiner's Findings

[¶ 15.] The circuit court found that the Secretary of Revenue failed to give specific reasons for rejecting the hearing examiner's findings of fact and conclusions of law. Moreover, the court found that the Secretary's decision was devoid of any clearly erroneous analysis, indicating that the Secretary failed to give deference to the hearing examiner's credibility determinations. In light of our standard of review, the court's decision that the Secretary acted arbitrarily is of no consequence. In an administrative appeal, we review the Department's decision the same as the circuit court, unaided by any presumption that the court was correct. *Kurtz*, 1998 SD 37, ¶ 10, 576 N.W.2d at 882 (citing *Zoss v. United Bldg. Centers, Inc.*, 1997 SD 93, ¶ 6, 566 N.W.2d 840, 843).

[¶ 16.] Certainly, SDCL 1-26D-8 requires the Department to give written reasons for rejecting a decision; the purpose of such a requirement is to ensure meaningful appellate review. *See* In the *Matter of SDDS, Inc.*, 472 N.W.2d 502, 512 (S.D.1991). The Secretary's two sentence rejection of the hearing examiner's findings was indeed without elaboration. Read together with his findings of fact and conclusions of law, however, meaningful appellate review is possible. Additionally, the absence of a "clearly erroneous analysis" can be explained by the nature of the question involved. The imposition of a tax under a given factual situation is a question of law. *Sanborn Tel. Co-op.*, 455 N.W.2d at 225.

[¶ 17.] Reversed.

[¶ 18.] MILLER, Chief Justice, and SABERS, Justice, concur.

[¶ 19.] AMUNDSON, and GILBERTSON, Justices, dissent.

GILBERTSON, Justice (dissenting).

[¶ 20.] The services provided by the production specialists are predominantly concerned with promoting the sale of agronomy products. SDCL 10–45–4.1. As such, those services are exempt from use tax under SDCL 10–45–4. Therefore, I respectfully dissent from the court's conclusion to the contrary on Issue 2.

[¶ 21.] SDCL 10–45–4 provides:

> There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered. Any service as defined by § 10–45–4.1 shall be taxable, unless the service is specifically exempt from the provisions of this chapter.

The term "service" is defined as "all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service *as distinguished from selling property*." SDCL 10–45–4.1 (emphasis added). Pursuant to these two statutes, any activity that "predominantly involve[s] the sale of tangible personal property rather than the performance of a service" is not subject to use tax. *Nash Finch Co. v. Dep't of Revenue*, 312 N.W.2d 470, 472 (S.D.1981). In addition, when determining taxability we must examine the transaction as a whole. *Sioux Falls Newspapers, Inc. v. Secretary of Revenue*, 423 N.W.2d 806, 809 (S.D. 1988).

[¶ 22.] As noted by the court's opinion, when "determining what is a service, the intended use, principal objective or ultimate objective of the contracting parties shall not be controlling." SDCL 10–45–

4.1. However, this statute clearly does not require us to ignore the primary objective of the parties. While not dispositive, the primary objective of the parties is certainly relevant to the determination of the predominant activity in any particular situation. If the legislature truly wished to completely preclude us from considering the primary objective of the parties, it could quite simply have so stated. *See Matter of Loomis*, 1998 SD 113, ¶ 11, 587 N.W.2d 427, 429.

[¶ 23.] As the Department concedes in its brief, a "production specialist is a highly educated salesperson of agronomy products who, as part of a sales pitch, offers advice to the farmer or rancher." In addition, the Department's auditors acknowledged that any services provided are "directly related to the sale of a product." Despite these admissions, the court concludes this transaction was predominantly a service by focusing on the advice offered, rather than the sale of agronomy products.

[¶ 24.] I submit the production specialists' activities predominantly involve the sale of agronomy products. SDCL 10–45–4.1. Production specialists spend approximately 80% of their time contacting farmers, developing rapport, and attempting to sell agronomy products. They conduct soil tests, determine fertility and historical production rates, and recommend products suited for the farmer's particular needs. A crop management program is established, allowing the farmer to analyze the income and expenses generated for each individual field or crop. To establish these programs, production specialists analyze crop scouting reports, soil maps, and prior crop and chemical usage. Additionally, farmers place orders for the vendor's product directly with the production specialists. These activities are provided to convince farmers that the products are needed and the costs are justified. Much

like the free delivery of purchases to the farmers, they are also provided, free of charge, with one goal in mind: sell agronomy products.

[¶ 25.] In addition to the groundwork done in the field, there is further evidence the work of production specialists predominantly involve the sale of agronomy products. They only recommend their employer's products to farmers. Much like a Gateway representative will not recommend a Dell computer, a production specialist employed by Cenex/Land O'Lakes will not recommend that a farmer purchase an herbicide sold by a competitor. Since the taxpayers receive no direct payment from farmers for the advice and consultation provided by the production specialists, the only benefits they receive are increased sales of agronomy products. If sufficient sales were not generated to offset the cost of the production specialists, the program would quickly be discontinued. In addition, the existence and availability of production specialists is a major reason the taxpayers do business with the vendors. Finally, farmers receive advice only in conjunction with the sale of agronomy products.

[¶ 26.] The activities of the production specialists in this instance predominantly involve the sale of agronomy products. Indeed, it is no different than the technique used by any successful salesperson. One must convince a potential buyer first that the product is needed, and second that it is justified. To separate these two steps from the actual magical moment of sale ignores our mandate in *Sioux Falls Newspapers* to examine the entire transaction when determining taxability. 423 N.W.2d at 809. This separation also ignores the groundwork that must be laid before a sale will be consummated. The activities of the production specialists "predominantly involve the sale of [agronomy

products] rather than the performance of a service." *Nash Finch*, 312 N.W.2d at 472. Therefore, the expense incurred related to those specialists should be exempt from use tax under SDCL 10–45–4.

[¶ 27.] AMUNDSON, Justice, joins this dissent.