#23555, #23571-a-RWS

**2006 SD 14**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

RANDY KASUSKE,                                 Claimant and Appellant,

  v.

FARWELL, OZMUN, KIRK & CO.,                     Employer and Appellee,
  and
GREAT AMERICAN INSURANCE
COMPANIES,                                      Insurer and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MAX GORS
Judge

* * * *

BRIAN L. RADKE
Radke Law Office
Sioux Falls, South Dakota                       Attorneys appellant.


TIMOTHY M. GEBHART of
Davenport, Evans, Hurwitz and Smith
Sioux Falls, South Dakota                       Attorneys for appellees.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2006

OPINION FILED **02/08/06**

#23555, #23571

SABERS, Justice

[¶1.]	Randy Kasuske (Kasuske) petitioned the South Dakota Department of Labor (Department) to reopen his workers' compensation claim. After a hearing, the Department issued an order dismissing Kasuske's petition. On appeal, the circuit court affirmed the Department's decision. Kasuske appeals. We affirm.

**FACTS**

[¶2.]	Randy Kasuske was employed as a shipping clerk by Farwell, Ozmun, Kirk & Co. (Employer). In March 1983, Kasuske injured his lower back while lifting a seventy-five pound box. Kasuske felt pain in his lower back that extended down his left leg.

[¶3.]	It was later discovered that Kasuske had suffered a herniated disk. Over the course of several years, Kasuske underwent multiple surgeries performed by multiple physicians. Employer, through its insurer, Great American Insurance Companies (Insurer), paid the expenses associated with Kasuske's surgeries, physical therapy, pain medications, and other workers' compensation benefits. Kasuske stopped working in 1987 and began receiving social security disability benefits in 1988. He later filed a petition for hearing with the Department, alleging that the injury had rendered him permanently and totally disabled.

[¶4.]	In 1992, Kasuske entered into a settlement agreement with Employer and Insurer. He released Employer and Insurer from all past, present, and future claims, including his claims for permanent and total disability benefits under the odd lot doctrine. In exchange, Employer and Insurer paid Kasuske a lump sum of $60,000, plus an additional $1,795.18 in unpaid medical expenses. The agreement

-1-

permitted Kasuske to pursue future medical treatment. However, Employer and Insurer reserved the right to dispute whether the treatment was reasonable, necessary, or medically related to Kasuske's injury. The Department approved the agreement and dismissed Kasuske's petition with prejudice.

[¶5.]     Kasuske's physical condition did not change during the four years subsequent to signing the agreement. However, in 1996, he started complaining of pain in his upper back, shoulders, arms, and hands. He also complained of extreme headaches. Kasuske sought treatment for these ailments from several physicians.

[¶6.]     He petitioned the Department to reopen his claim based upon the claim that his condition had deteriorated by developing new and more serious features. Employer responded by arguing that Kasuske had already been compensated for his permanent and total disability and that the agreement barred him from collecting further benefits. Both parties filed motions for summary judgment on whether the settlement agreement barred Kasuske's petition to reopen. The Department denied Employer's motion and granted summary judgment for Kasuske, relying on our decision in *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, 575 NW2d 225. The matter was then scheduled for hearing.

[¶7.]     Kasuske and his wife were the only witnesses who testified at the hearing. He introduced his medical evidence by stipulation. In addition, he introduced various letters between his attorney and his physicians. Employer introduced the deposition of its expert witness, Dr. Farnham, who had conducted an independent medical examination of Kasuske.

[¶8.] The Department concluded that Kasuske's present condition was not causally related to the injury he sustained in 1983 and, as a result, ruled in favor of Employer. Kasuske appealed to the circuit court. The circuit court affirmed, relying on the same rationale as the Department. We address the following issue on appeal:

**Whether Kasuske met his burden of proving that his present medical conditions are causally related to the 1983 injury.**[1]

### Standard of Review

[¶9.] "In workers' compensation cases, our standard of review is controlled by SDCL 1-26-37." Kassube v. Dakota Logging, 2005 SD 102, ¶25, 705 NW2d 461, 465. The Department's factual findings and credibility determinations involving Kasuske's testimony are reviewed under the clearly erroneous standard. Enger v. FMC, 1997 SD 70, ¶10, 565 NW2d 79, 83 (citing Tieszen v. John Morrell & Co., 528 NW2d 401, 403-04 (SD 1995)). However, the vast majority of the record in this case is comprised of documentary evidence. We review documentary evidence *de novo*, affording no deference to the Department's findings or inferences. Haynes v. Ford, 2004 SD 99, ¶14, 686 NW2d 657, 661 (citing Watertown Coop. Elevator Ass'n v. S.D. Dept. of Revenue, 2001 SD 56, ¶10, 627 NW2d 167, 171).

[¶10.] Finally, pure questions of law and mixed questions of law and fact are fully reviewable. *Enger*, 1997 SD 70, ¶10, 565 NW2d at 83 (additional citations omitted). Although SDCL 1-26-37 mandates the degree of deference we give to the

---

1. Kasuske raises several issues on appeal. We find some without merit and others unnecessary to address because of our holding on the issue of causation.

Department's decision, the circuit court's decision receives no deference. *Kassube*, 2005 SD 102, ¶25, 705 NW2d at 465 ("When a circuit court has reviewed an administrative agency's decision, we review the agency's decision unaided by any presumption that the circuit's decision was correct.") (internal quotations omitted).

## Decision

[¶11.] "Ordinarily, workers' compensation awards whether by agreement or adjudication are final unless the Department reserves jurisdiction." *Sopko*, 1998 SD 8, ¶9, 575 NW2d at 229. However, the rules governing the finality of releases in workers' compensation cases are more forbearing. *Id.* ¶10. We have continually held that a release may be set aside "when the consequences of an injury were … discovered after the release was signed." *Id.*; Mills v. Spink Electric Coop., 442 NW2d 243 (SD 1989); Novak v. C.J. Grossenburg and Son, 89 SD 308, 232 NW2d 463 (1975). The Legislature codified an exception to the finality rule in workers' compensation cases by enacting SDCL 62-7-33. That statute provides in part:

> Any payment, including medical payments under § 62-4-1, and disability payments under § 62-4-3 if the earnings have substantially changed since the date of injury, made or to be made under this title may be reviewed by the Department of Labor pursuant to § 62-7-12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased, or awarded subject to the maximum or minimum amounts provided for in this title, *if the department finds that a change in the condition of the employee warrants such action[.]*

(emphasis added).

[¶12.]      The party asserting a "change in condition" bears the burden of proving it.[2]  *Sopko*, 1998 SD 8, ¶12, 575 NW2d at 230 (citing *Mills*, 442 NW2d at 246).  Only when that burden has been met, may the Department reopen a previous award.  *Id.* ¶12 (additional citations omitted).  In *Mills*, we adopted a broad interpretation of the term "change in condition," noting:

> The "change in condition" which justifies reopening and modification is ordinarily a change, for better or worse in claimant's physical condition.  This change may take such forms as progression, deterioration, or aggravation of the compensable condition, achievement of disabling character by a previously symptomatic complaint, appearance of new and more serious features, such as discovery of a disc herniation in a back case, failure to recover within the time originally predicted, and superimposition or worsening of a neurotic condition.

442 NW2d at 246.  Even if a claimant proves a "change in condition," the Department may refuse to reopen the claim if the "change in condition" was foreseeable at the time of settlement.  *Sopko*, 1998 SD 8, ¶15, 575 NW2d at 233 ("When an injured worker seeks to reopen a settlement which includes a waiver of future rights, the focus is on whether the asserted "change in condition" derives from an injury unknown at the time of the settlement or from a known injury with its disabling character unknown."); *see also Mills*, 442 NW2d at 246 ("Because he [Mills] could not have anticipated such extensive future medical expenses, any alleged waiver is ineffective.").

[¶13.]      It is also well settled that "to recover disability benefits under the work[ers'] compensation statutes, the claimant has the burden of establishing a

---

2.      The Department did not reach the issue of whether Kasuske suffered a "change in condition."

causal connection between the employment and the disability." Day v. John Morrell & Co., 490 NW2d 720, 724 (SD 1992) (citing Lawler v. Windmill Restaurant, 435 NW2d 708, 710 (SD 1989)) (internal quotations omitted). Ordinarily, the opinions of experts are required to establish a causal relationship between the incident and the injury. *Id.* (citing Miner v. Robertson Home Furnishing, 239 Neb 525, 476 NW2d 854 (1991)). "A workers' compensation award cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment." *Id.* (quoting Wold v. Meilman Food Industries, 269 NW2d 112, 115 (SD 1978)). Thus, claimant must introduce medical evidence sufficient to establish causation by a preponderance of the evidence. *Enger*, 1997 SD 70, ¶18, 565 NW2d at 85 (citing Hanton v. Palace Builders, Inc., 1997 SD 3, ¶8, 558 NW2d 76, 78).

[¶14.]     Our modern cases have not focused on the causation element of reopening a workers' compensation claim. *Mills* focused only on the effect of the release and settlement and whether the claimant had proved a "change in condition." *Mills,* 442 NW2d at 244. However, the burden of causation remains a prerequisite to reopening a claim. In order to reopen a claim, the claimant must prove that the "change in condition" is causally connected to the original, compensable injury.

[¶15.]     We addressed, in a collateral manner, the issue of causation in *Sopko.* 1998 SD 8, ¶17, 575 NW2d at 232. Specifically, the employer in *Sopko* argued that the claimant's "change in condition" was not causally connected to his work-related accident. *Id.* We refused to permit parol evidence on that issue, when the injury

was known prior to settlement, and the settlement agreement made no mention that causation was in dispute. *Id.*

[¶16.] Kasuske relies heavily on this portion of *Sopko*, claiming that we are limited to the settlement agreement in determining the issue of causation. However, as Employer points out in its brief, Kasuske's argument fails in two respects. First, the parol evidence upon which the employer relied in *Sopko* was testimony by the claimant's attorney that he could not have proved that the injury was causally related to the employment had the matter not been settled. Kasuske, on the other hand, urges us to ignore the medical records and vocational reports in the present case. Because a "change in condition" must be proved to reopen a workers' compensation claim, this evidence will be highly relevant in all matters similar to the present case. Indeed, it would be very difficult to ascertain a "change in condition" if courts cannot examine the pre-settlement and post-settlement medical records. Second, even if we were to adopt Kasuske's position, he would be precluded from relying on the parol evidence rule because he failed to object to any of this evidence at the hearing. First Nat'l Bank v. Bank of Lemmon, 535 NW2d 866, 868 (SD 1995). In fact, Kasuske actually introduced some of this evidence.

[¶17.] In summary, there are three things a claimant must prove to have his workers' compensation claim reopened. First, the claimant must prove a "change in condition." Second, the claimant must prove that the asserted "change in condition" derives from an injury unknown at the time of settlement or from a known injury with its disabling character unknown. Finally, a claimant must prove that the

unknown injury is causally connected to employment, or that the unknown

disabling character is causally connected to the original, compensable injury.

[¶18.]        Kasuske claims his "change in condition" includes additional pain in

his arms, upper back, and shoulders.  He also claims that he suffers constant

headaches.  According to Kasuske, this additional pain is the result of myofascial

pain syndrome[3] which is turning into fibromyalgia.[4]  After reviewing the record, we

conclude that Kasuske has failed to meet his burden of proving his alleged "change

in condition" is causally connected to his original, compensable injury.

[¶19.]        The record in this case is comprised of thousands of pages of medical

records and correspondence.  Kasuske has been treated by four different physicians

since entering into the settlement agreement with Employer.  Two of those

physicians now support his assertion that his new conditions are causally related to

the injury he suffered in 1983.  However, those physicians have been inconsistent in

their opinions.  The other two treating physicians concluded that either Kasuske

does not have fibromyalgia, or that it is impossible to determine the cause of

fibromyalgia.  Finally, a fifth physician, who conducted an independent medical

examination of Kasuske, determined that he did not have fibromyalgia and, that

even if he did, it would not be related to the injury suffered in 1983.  This was the

---

3.      "A condition characterized by chronic pain in the muscle tissues, similar to
        fibromyalgia."  Available at
        http://www.medterms.com/script/main/art.asp?articlekey=11694 (Last visited
        on 12/23/2005).

4.      "A syndrome characterized by chronic pain, stiffness, and tenderness of
        muscles, tendons, and joints without detectable inflammation."  Available at
        http://www.medterms.com/script/main/art.asap?articlekey=3453 (Last visited
        on 12/23/2005).

only physician whose testimony was subject to cross-examination. The other four physicians' opinions were introduced by affidavit, or by way of medical records that were stipulated to between the parties. We cannot say it was error for the Department to rely more heavily upon the deposition testimony. *See* Paulson v. Black Hills Packing Co., 1996 SD 118, ¶13, 554 NW2d 194, 195 (affirming the trial court when it gave more weight to testimony where the physician had been "thoroughly and adversely examined under oath…"). Under these circumstances, Kasuske has not met his burden of proving that his alleged "change in condition" is causally related to the 1983 injury.[5]

[¶20.]    Affirmed.

[¶21.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

5.    Because of our holding as to causation, it is unnecessary to address whether Kasuske's symptoms constitute a "change in condition."