#23847, #23848-rev in pt & aff in pt-JKK

**2007 SD 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CHERYL TEBBEN,                                            Claimant and Appellant,

 v.

GIL HAUGAN CONSTRUCTION, INC.,            Employer and Appellee,
and
GENERAL CASUALTY,                                       Insurer and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN K. CALDWELL
Judge

\* \* \* \*

JAMES G. ABOUREZK of
Abourezk Law Offices, P.C.
Sioux Falls, South Dakota                              Attorney for appellant.

MICHAEL S. McKNIGHT
LISA HANSEN MARSO of
Boyce, Greenfield, Pashby & Welk, L.L.P.            Attorneys for employer,
Sioux Falls, South Dakota                              insurer and appellees.

\* \* \* \*

ARGUED FEBRUARY 14, 2006
REASSIGNED OCTOBER 11, 2006

OPINION FILED **02/21/07**

KONENKAMP, Justice (on reassignment).

[¶1.]     Cheryl Tebben sought workers' compensation benefits for the death of her husband.  The Department of Labor denied her claim and Ms. Tebben appealed to the circuit court.  The court affirmed the Department's decision and she now appeals to this Court.  We reverse in part and affirm in part.

## Background

[¶2.]     Cheryl and Brian Tebben were married on March 1, 1978.  Brian Tebben began working for Gil Haugan Construction, Inc. in July of 2000, primarily as an equipment operator.  On July 12, 2003, he fell ill with symptoms that included extreme sweating, vomiting, and weakness.  He was taken to the emergency room at Avera McKennan Hospital in Sioux Falls, South Dakota.  A CT scan revealed no apparent cause for his symptoms.  The physician treating Mr. Tebben believed he was suffering from an inner ear infection and sent him home.

[¶3.]     Mr. Tebben returned to work at Haugan Construction the following Monday.  Two days later, on Wednesday, July 16, 2003, he returned to the emergency room with the same symptoms he had before, but he was also experiencing slurred speech.  His family physician, Dr. Michael Farritor, sent him to Sioux Valley Hospital for an MRI, which revealed that Mr. Tebben had suffered several small strokes.  He was admitted to the hospital and Dr. Farritor ordered a neurological consultation with Dr. Gene Koob, a Sioux Falls neurologist.

[¶4.]     Dr. Koob examined Mr. Tebben and reviewed the MRI report.  In his consultation report of July 16, 2003, he wrote:

> Certainly MRI looks like a sub acute stroke, which could extend
> back to last week.  Possibility of vasculitis needs to be

> considered, certainly embolus and from the heart has to be considered and because of mother's history of blood clot we should consider the possibility of an inherited coagulation defect. Also, I think the strong thing we should think about in a physically active male such as him, would be the possibility of a vertebral dissection. The basilar artery on the MRI looks pretty good. He has had his cardiac sector scan.

Dr. Koob then ordered an MRA.[1] Dr. Edward J. Czarnecki, a radiologist, reviewed the MRA and reported that "[t]he proximal right vertebral artery is occluded with reconstitution, possibly through an ascending thyroidal branch."

[¶5.] Mr. Tebben was discharged from the hospital on July 18, 2003, with orders from Dr. Koob to not work for one week and then perform only light-duty work after that. On Monday, July 21, Mr. Tebben went to Haugan Construction to file a workers' compensation claim. Later that day, he again experienced severe sweating, head pain, and dizziness. He returned to see Dr. Koob, who ordered an EKG. Dr. Farritor performed the EKG and concluded that it was normal, but set an appointment for Mr. Tebben to receive another MRI the next day. In the meantime, Mr. Tebben was sent home, but was advised that if he experienced any more symptoms to go to the hospital. That night he had difficulty breathing and collapsed at his home. Ms. Tebben called 911 and Mr. Tebben was rushed by ambulance to the hospital. He was unresponsive. An MRA was performed and Radiologist Dr. Daniel Crosby found that "[t]here is a complete absence of flow seen within the distal right and left vertebral arteries and basilar arteries through to the

---

1. Dr. David Sabow, Ms. Tebben's expert, testified that an MRA (magnetic resonance angiography) is like an MRI (magnetic resonance imaging), "but what they do is they change the physical parameters and inject into the bloodstream a certain type of contrast."

basilar tip." Dr. Crosby then concluded that the "[o]ccluded distal left and right vertebral arteries and basilar arteries as described [are] consistent with progression of suspected dissection seen on examinations of 7/16/2003."

[¶6.]    Mr. Tebben was placed on life support in intensive care. He remained there for several days with no improvement. On July 28, 2003, he was declared brain dead. He expired after being removed from life support. He was forty-five years old. Ms. Tebben timely notified Haugan Construction of Mr. Tebben's death and filed a workers' compensation claim. Haugan Construction denied that his death arose out of and in the course of his employment or was causally related to his employment or employment related activities.

[¶7.]    A Department of Labor hearing was held on October 5-6, 2004. *See* SDCL 62-7-12. Dr. David Sabow, a board certified neurologist, testified at the hearing as an expert witness for Ms. Tebben. Haugan Construction's expert was Dr. Khalafalla Bushara, a clinical neurologist who is on staff at the Minneapolis Veterans Administration Medical Center and an assistant professor of neurology at the University of Minnesota. He testified by deposition.

[¶8.]    The medical experts for both parties agreed that the right vertebral artery was blocked at the section where the artery leaves the vertebra and enters the brain. However, the two experts disagreed on the cause of the blockage. Dr. Sabow believed that the blockage was caused by a "dissection of the vertebral artery with secondary stroke in the base of the brain."[2] According to Dr. Sabow, because

---

2.    During his deposition, Dr. Bushara provided the following description of a vertebral artery dissection:

(continued . . .)

Mr. Tebben suffered a hangman's fracture in 1984, he weakened or injured his vertebral artery.[3] Then, he explained that "there was an accumulation of injury, especially with the heavy equipment operating and overhead work, and that eventuated in the more acute dissection[,] which then went on to be the cause of his death."[4] Based on reasonable medical probability, Dr. Sabow opined that the cause of Mr. Tebben's death was a dissection of the vertebral artery.

[¶9.]    Dr. Bushara, on the other hand, concluded that Mr. Tebben's death could not have been caused by a dissection of the vertebral artery. He based his conclusion on his belief "that objective radiological evidence of a dissection was specifically looked for and never found." According to Dr. Bushara, Dr. Koob and Dr. Crosby's medical reports did not include any specific findings from the MRA or

_____

(. . . continued)

the artery or any vessel really has three layers, the inner layer, which is a smooth endothelium or intima, and then the middle layer connective tissue and then the outer layer with the muscle. And the inner layer or the intima, if there is a cut or a tear the blood is forced between the intima and the other layers causing the intima to swell and block the artery[.]

3.    Mr. Tebben's prior medical history included a severe cervical injury suffered in a motor vehicle accident in 1984. A fracture to his second cervical vertebrae at the junction of the lamina and spinous process, commonly known as a "hangman's fracture," required treatment with a halo collar for three months. According to his medical records, Mr. Tebben suffered no neurological symptoms from the fracture.

4.    Five months before his death, Mr. Tebben had worked a significant amount of time on a Haugan Construction job site caulking ceilings, which required him to keep his arms over his head and extend his neck back for prolonged periods of time. Dr. Koob opined that Mr. Tebben's work "driving heavy equipment [at Haugan Construction] and his previous bouts of work involving having his neck extended for prolonged periods of time were both significant possibilities as to the cause of his problem."

MRI that indicated a dissection, only a suspicion of a dissection. Moreover, he asserted that it was highly uncommon for a hangman's fracture to result in a vertebral artery dissection nineteen years after the original injury. Rather, if such an injury were to cause a dissection, Dr. Bushara believed that it was more likely to occur within weeks of the original injury.[5] Therefore, he concluded, based on a reasonable medical certainty, Mr. Tebben died from an embolization of a clot that traveled and occluded his right vertebral artery and caused a stroke. When asked where the emboli originated, he stated that it was not possible for him to identify an origin because the tests necessary for such determination were not ordered by the treating physician. However, he asserted that the origin was not determinative of his diagnosis or causation opinions.

[¶10.] The Department issued its decision on March 30, 2005. It found that because Dr. Koob, in his December 5, 2003 letter, merely opined that it was "possible" that Mr. Tebben's death was caused by his work activities, his opinion did not establish that Mr. Tebben's work activities were a major contributing cause of his death. Further, with respect to Dr. Sabow's opinion, the Department deemed it without foundation and inconclusive. According to the Department, "[a]t best, the

---

5. Ms. Tebben's counsel attempted to impeach Dr. Bushara using a letter dated May 7, 2004, authored by Dr. Koob, in which Dr. Koob stated that the dissection was the cause of Mr. Tebben's injury and death. However, the letter had not been disclosed during discovery. Counsel for Haugan Construction requested a copy. Ms. Tebben's counsel refused, maintaining that it was protected attorney work product. Haugan Construction moved to compel production of the letter. The Department denied the request, but granted a continuance to depose Dr. Koob. With his impending heart surgery, however, Dr. Koob was removed from the expert witness list and the deposition was never taken.

medical opinions are not conclusive" on whether Mr. Tebben suffered a dissection of the vertebral artery, because Dr. Bushara testified that a dissection was specifically looked for but never found and Dr. Sabow opined that a dissection did in fact occur. Moreover, the Department found that the evidence was inconclusive on whether Mr. Tebben suffered arterial damage as a result of the 1984 accident and whether his work activities were a major contributing cause of his illness and death. Thus, the Department denied Ms. Tebben's claim, concluding that she failed to show by a preponderance of the evidence that there was a causal connection between Mr. Tebben's work and illness and his eventual death.

[¶11.]     Ms. Tebben timely appealed the Department's decision. Before the hearing in circuit court, she moved under SDCL 1-26-34 to present additional testimony. At the hearing on this motion, Ms. Tebben argued that good cause existed to allow additional evidence in the form of Dr. Koob's opinion. According to Ms. Tebben, Dr. Koob's deposition could not be taken in advance of the Department's hearing because of his impending heart surgery. Dr. Koob was unable to testify live at the hearing because he was on a ventilator at that time. When asked why the hearing was not continued to allow Dr. Koob's deposition to be taken, Ms. Tebben's counsel noted that it was impossible at that time to predict when Dr. Koob would recover sufficiently to be available for a deposition due to his age and serious medical condition. In addition, counsel noted that Ms. Tebben wanted to complete the hearing as soon as possible as she was suffering serious financial difficulties from her own disability, which precluded her from working. She was also about to file for bankruptcy in order to save her family home.

Ultimately, the circuit court denied Ms. Tebben's motion to present Dr. Koob's testimony.

[¶12.] Ms. Tebben also moved to present additional testimony from Dr. Crosby. At a second hearing, Ms. Tebben argued that the second page of Dr. Crosby's report indicated that a vertebral artery dissection had been found, and therefore, Dr. Bushara's testimony was clearly erroneous as it was based exclusively on Dr. Crosby not finding a dissection. Haugan Construction opposed the motion, arguing that the second page of the report did not specifically state that a dissection had been found, only that it was suspected. In addition, Haugan Construction noted that Dr. Bushara's opinion was not exclusively based on the fact that Dr. Crosby did not find a vertebral artery dissection. Dr. Bushara also testified that neither of the MRA reports included findings of the type of abnormalities that would ordinarily be associated with a dissection. In addition, he stated that even if he were to assume a dissection had occurred, it was his opinion, within a reasonable degree of medical certainty, that it would not have been caused by Mr. Tebben's work at Haugan Construction.

[¶13.] An offer of proof was made, which included an affidavit by Dr. Koob stating that in his opinion, based on a reasonable medical probability, a dissection of the vertebral artery was the cause of Mr. Tebben's death and was the result of his work activities. An affidavit from Dr. Crosby was also included, which stated that his two-page radiology report, dated July 16, 2003, contained his impression from his reading of the MRA and was consistent with a vertebral dissection. Thus, Dr. Crosby stated that in his opinion, based on a reasonable medical probability, Mr.

Tebben suffered from a dissection of his vertebral artery. The circuit court denied Ms. Tebben's second motion.

[¶14.] Thereafter, the circuit court affirmed the Department's ruling denying Ms. Tebben workers' compensation benefits. On appeal to this Court, Ms. Tebben asserts that (1) the Department erred when it held that Mr. Tebben did not die from a dissection of his vertebral artery, and (2) the circuit court erred when it denied her motion to re-open the Department's hearing to provide additional evidence from Dr. Koob and Dr. Crosby. By notice of review, Haugan Construction contends the Department erred when it denied its motion to compel discovery related to Dr. Koob.

**Standard of Review**

[¶15.] "Under SDCL 1-26-36, we must 'give great weight to the findings made and inferences drawn by an agency on questions of fact.' However, when an agency's decision is '[c]learly erroneous in light of the entire evidence in the record' a reviewing court should reverse." Wells v. Howe Heating & Plumbing, Inc., 2004 SD 37, ¶9, 677 NW2d 586, 590 (quoting SDCL 1-26-36). Questions of law are reviewed de novo. *Id.* (citations omitted). We also examine, de novo, the documentary evidence contained in the record. Kasuske v. Farwell, Ozmun, Kirk & Co., 2006 SD 14, ¶9, 710 NW2d 451, 453 (citations omitted). A reviewing court must consider the evidence in its totality and set the Department's findings aside if the court is definitely and firmly convinced a mistake has been made. Sopko v. C & R Transfer Co., Inc., 1998 SD 8, ¶7, 575 NW2d 225, 228-29.

**Analysis and Decision**

[¶16.]     Ms. Tebben contends that the Department's decision is clearly erroneous.  Dr. Sabow and Dr. Koob both opined, based on a reasonable medical probability, that Mr. Tebben suffered a dissection of the vertebral artery and that his work activities were a major contributing cause of the dissection.  The only evidence in the record offered to contradict their opinions was the deposition testimony of Dr. Bushara.  While Dr. Bushara stated that Mr. Tebben did not suffer a dissection, he explained that his opinion was "[b]ased on the report from the radiologist."  Moreover, when asked whether it was possible that Mr. Tebben died of a dissection of the vertebral artery, Dr. Bushara stated, "Only if it is missed by the radiologist, yes."

[¶17.]     Nonetheless, Haugan Construction insists that Dr. Bushara's opinion is based on more than his reading of the radiologist's report.  It asserts that Dr. Bushara also considered the fact that Mr. Tebben was a heavy smoker, and that, according to Dr. Bushara, the 1984 hangman's fracture and Mr. Tebben's work activities do not necessarily lead to the conclusion that a dissection occurred.  Dr. Sabow, however, testified that because Mr. Tebben, at age forty-five, was trim and in good health, the smoking alone was not a significant risk factor and would not have caused the stroke.  Moreover, Dr. Koob, in his consultation report from July 16, 2003, remarked that "the strong thing we should think about in a physically active male such as him, would be the possibility of a vertebral dissection."

[¶18.]     Although there certainly is a dispute over what extent Mr. Tebben's smoking contributed to his death, the Department did not base its decision to deny

benefits because it believed Mr. Tebben's smoking was the major contributing cause. Rather, the Department denied Ms. Tebben benefits because it accepted Dr. Bushara's opinion that the radiology report did not indicate that Mr. Tebben suffered a dissection of the vertebral artery. Further, the Department concluded that

> [a]t best the medical opinions are not conclusive as to whether [Mr.] Tebben suffered a dissection of the vertebral artery, whether [he] suffered arterial damage in the 1984 accident that combined with his work activities, whether his work activities caused an injury to his vertebral artery, and whether his work activities were a major contributing cause of his illness and death.

Because the Department found the medical evidence to be inconclusive, it held that Ms. Tebben "has not met the burden of showing causation by a preponderance of the evidence" and denied her claim for benefits.

[¶19.]      In a worker's compensation case, the "'claimant has the burden of proving all facts essential to compensation[.]'" Phillips v. John Morrell & Co., 484 NW2d 527, 530 (SD 1992) (quoting King v. Johnson Bros. Constr. Co., 83 SD 69, 73, 155 NW2d 183, 185 (1967)). To prevail, a claimant "must establish, among other things, that there is a causal connection between [the] injury and [the] employment. That is, the injury must have its origin in the hazard to which the employment exposed the employee while doing [the] work." Caldwell v. John Morrell & Co., 489 NW2d 353, 357-58 (SD 1992) (internal citations and quotations omitted); see also Hanten v. Palace Builders, Inc., 1997 SD 3, ¶9, 558 NW2d 76, 78 (citations omitted). "No injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of[.]" SDCL 62-1-1(7)(a).

-10-

[¶20.] On the first page of Dr. Crosby's MRA report, he remarked,

FINDINGS:

There is a complete absence of flow seen with the *distal right and left vertebral arteries and basilar arteries* through to the basilar tip. Flow is present within both the posterior cerebral arteries supplying the patent posterior communicating arteries from the internal carotid arteries. Likewise, there is also flow seen within the left posterior inferior cerebellar artery.

The left and right internal carotid, anterior and middle cerebral arteries are patent with no areas of high grade stenosis or distal flow delay. No findings supportive for a dissection.

(Emphasis added). On the second page under the heading of "IMPRESSION" Dr. Crosby reported,

1. *Occluded distal right and left vertebral arteries and basilar arteries as described consistent with progression of suspected dissection seen on examinations of 07/16/2003.*
2. Patent posterior cerebral arteries supplied by the internal carotid arteries as described.
3. Patent left posterior inferior cerebellar artery consistent with a patent more proximal left vertebral artery.

(Emphasis added).

[¶21.] Contrary to Dr. Bushara's conclusion that a dissection was "not confirmed," this report in fact does confirm that the "suspected" dissection was consistent with Dr. Crosby's findings in the MRA films. The word "suspected" does not refer to Dr. Crosby's opinion, but rather refers to Neurologist Dr. Koob's earlier suspicion of a dissection, which required confirmation from Dr. Crosby's examination of the MRA films.[6]

_____

6. In Dr. Koob's discharge summary, dated July 18, 2003, he stated, "Mr. Tebben is a 45-year-old male admitted to the hospital with acute bilateral cerebellar stroke and who has been found on our studies to have an *occluded*

(continued . . .)

[¶22.]    We have often said that medical opinions can be no better than the facts they rely on. *Westergren v. Baptist Hosp. of Winner*, 1996 SD 69, ¶25, 549 NW2d 390, 397 (citing *Helms v. Lynn's, Inc.*, 1996 SD 8, ¶21, 542 NW2d 764, 768; *Bridge v. Karl's, Inc.*, 538 NW2d 521, 525 (SD 1995)). Dr. Bushara's opinion, which relied on Dr. Crosby's MRA report, is completely undercut by that very report.[7] Indeed, Dr. Crosby's report was available to the Department at the hearing and to Dr. Bushara both before and during his deposition. It was simply overlooked by everyone, including counsel for Ms. Tebben. The Department carried over this mistake in the findings: "Dr. Bushara opined that objective radiological evidence of a dissection was specifically looked for and never found." In affirming the Department, the circuit court wrote that Dr. Crosby's report, "does not clearly state that a dissection was observed by the radiologist, but could be interpreted to mean that his observations were merely consistent with a suspected dissection." Thus, the original error in Dr. Bushara's opinion that there was "no evidence" of a dissection was compounded by a conclusion that Dr. Crosby's report was *unclear*.

[¶23.]    To correct the chain of mistaken conclusions reached by the Department and the circuit court, Ms. Tebben moved, under SDCL 1-26-34, to present additional evidence to the circuit court. She offered, among other things,

---

(. . . continued)
*vertebral artery on the right felt to be secondary to an arterial dissection.*"
(Emphasis added).

7.    In arguing that Dr. Crosby reported that there were "[n]o findings supportive for a dissection," Haugan Construction quotes from the first page of Dr. Crosby's report. But that quote only refers to his findings with respect to the

(continued . . .)

the affidavit of Dr. Crosby, wherein he reconfirmed that he found a vertebral dissection in the MRA. In denying the motion, the circuit court wrote that Ms. Tebben "had the opportunity to offer the testimony of Dr. Crosby at the hearing and failed to do so." Whether the court ruled correctly on that motion need not be decided. We need go no further than to say that the Department's original conclusion based on Dr. Bushara's mistaken opinion was clearly erroneous. *See* Rawls v. Coleman-Frizzell, Inc., 2002 SD 130, ¶18, 653 NW2d 247, 251 (citing *Sopko*, 1998 SD 8, ¶6, 575 NW2d at 228).

[¶24.]     Because the medical evidence was offered through depositions, we review de novo all this testimony and the accompanying exhibits. Watertown Coop. Elevator Ass'n v. S.D. Dept. of Revenue, 2001 SD 56, ¶10, 627 NW2d 167, 171 (citations omitted); *see also Kasuske*, 2006 SD 14, ¶9, 710 NW2d at 453 (citations omitted). From our de novo examination of the record, we can say unequivocally that Dr. Bushara's opinion mistakenly interpreted Dr. Crosby's report, and, in accepting that flawed opinion, the Department was clearly erroneous. For this reason, the case is remanded to the Department for a new hearing.

[¶25.]     A new hearing must also be granted because the Department further erred in requiring all the medical opinions to be conclusive on whether Mr. Tebben suffered a dissection of his vertebral artery and that the dissection was related to his work activities. Ms. Tebben's burden in this case was to prove causation by a

---

(. . . continued)

"carotid" and "cerebral" arteries, not the "vertebral" arteries discussed on the second page. It seems obvious that everyone overlooked this second page.

preponderance of the evidence, not beyond a reasonable doubt or with absolute certainty. *See Rawls*, 2002 SD 130, ¶20, 653 NW2d at 252 (quoting *Caldwell*, 489 NW2d at 358); *see also* A. Larson, *Larson's on Workers' Compensation Law*, 128.02(1) (award may be made when medical evidence is "inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent"). There was a dispute between the claimant's and the employer's experts. Yet, just because medical opinions differ does not mean that the claimant's medical evidence is inconclusive. It is only when a claimant's expert testimony is equivocal or based on mere possibility that we have found the evidence to be inconclusive and insufficient to satisfy the claimant's burden. *See* Enger v. FMC, 1997 SD 70, 565 NW2d 79 (the claimant's expert's testimony was equivocal); *Hanten*, 1997 SD 3, 558 NW2d 76 (*claimant's* expert advanced an equivocal medical opinion, thereby making the evidence inconclusive).

[¶26.]     Here, Ms. Tebben's expert, Dr. Sabow, testified on causation to a reasonable medical probability, not that causation was *possible* or that its *probabilities were equal*. It was Dr. Sabow's opinion that Mr. Tebben's death was caused by a dissection of the vertebral artery and that his work activities were a major contributing cause of the dissection. In addition to Dr. Sabow's expert opinion, Ms. Tebben entered into evidence two letters from Dr. Koob, Mr. Tebben's treating physician. In a letter dated February 5, 2004, Dr. Koob opined that within a degree of medical probability Mr. Tebben suffered a dissection of the vertebral artery, and that the dissection occurred in relation to his work activities. While Dr. Koob's letter was not sworn testimony, this alone does not render Dr. Sabow's opinion inconclusive. Under SDCL 19-15-3 (Rule 703), experts are permitted to

base their opinions or inferences on facts or data provided by others. Therefore, the Department's conclusion that Ms. Tebben failed to present sufficient medical evidence was clear error.

[¶27.] The only testimony entered in disagreement with Dr. Sabow's and Dr. Koob's medical opinions was the faulty opinion of Dr. Bushara. It is clear from the record that Dr. Bushara made a mistake, a mistake that the Department relied on to the detriment of the claimant. In a new hearing, there is a substantial likelihood that the claimant may be entitled to recover benefits. The South Dakota Workers' Compensation Act is remedial legislation enacted to protect employees injured in the course of their employment. When there is an obvious mistake resulting in denial of benefits, we will not hesitate to order a new hearing so that the mistake can be corrected.

[¶28.] By notice of review, Haugan Construction asserts that the Department abused its discretion when it denied Haugan Construction's motion to compel discovery related to Dr. Koob. At Dr. Bushara's deposition, counsel for Ms. Tebben read a portion of a letter authored by Dr. Koob to Ms. Tebben's attorney. After counsel read the selected portion, Haugan Construction requested a copy of the entire letter. Counsel for Ms. Tebben refused, claiming that the letter was protected as work product. Haugan Construction brought a motion to compel production of "all letters to and from [c]laimant or [her] attorney and [c]laimant's expert Dr. Koob, including but not limited to Dr. Koob's May 7, 2004 letter written by Dr. Koob to [c]laimant's attorney." According to Haugan Construction, the communications were discoverable under SDCL 15-6-26(b)(4). The Department

examined the contents of the letter and denied Haugan Construction's motion, concluding that "the portion of the letter not read at the deposition is attorney work-product and is not a medical record."

[¶29.]     "The test we apply for determining whether a document or tangible thing is attorney work product is whether 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  Kaarup v. St. Paul Fire & Marine Ins. Co., 436 NW2d 17, 21 (SD 1989) (citation omitted).  Based on our review of the record, Dr. Koob was not expressing his medical opinion, but was instead discussing matters related to his review of Dr. Bushara's report in anticipation of the upcoming deposition of Dr. Bushara.  *See* SDCL 15-6-26(b)(3) (work product is defined as "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative").  Dr. Koob's letter to Ms. Tebben's counsel, therefore, is clearly protected by attorney work product, and the Department did not abuse its discretion in denying Haugan Construction's motion.

[¶30.]     Reversed in part, and affirmed in part.

[¶31.]     GILBERTSON, Chief Justice and ZINTER and MEIERHENRY, Justices, concur.

[¶32.]     SABERS, Justice, concurs in part and dissents in part.

SABERS, Justice (concurs in part and dissents in part).

[¶33.] I concur on Issue l, but would not reach Issue 2, and if I did, I would reverse or permit the deposition of Dr. Koob prior to retrial.