*12 SABERS, Justice
(dissenting).
The ALJ erred when it concluded McDowell was bound by her claims and testimony and the testimony of her vocational expert in determining her condition at the time of the agreement and in ignoring all contrary evidence expressly incorporated therein.
[¶ 37.] SDCL 62-7-33 provides an exception to the finality rule in workers’ compensation cases and provides in part:
Any payment, including medical payments under § 62-4-1, and disability payments under § 62-4-3 if the earnings have substantially changed since the date of injury, made or to be made under this title may be reviewed by the Department of Labor pursuant to § 62-7-12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased, or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition of the employee warrants such action....
See Kasuske v. Farwell, 2006 SD 14, ¶ 11, 710 N.W.2d 451, 454-55. We have set forth three elements a claimant must prove to reopen: (1) a change in condition, (2) that the asserted change in condition derives from an injury unknown at the time of the settlement or from a known injury with its disabling character unknown, and (3) the unknown injury is causally connected to the employment, or that the unknown disabling character is causally connected to the original, compensable injury. Id. ¶ 17. We have defined a change in condition as:
[A] condition different from that which existed when the award was made. It must be a material and substantial change. As a general rule, it must be a change in the physical condition of the employee, affecting his [or her] earning capacity,[5]
Stender v. City of Miller, 82 S.D. 334, 339, 145 N.W.2d 913, 915 (1996) (emphasis added) (additional citations omitted). In this case, the ALJ held that any alleged change of condition suffered by McDowell was immaterial because it did not affect her earning capacity.
[¶ 38.] Professor Larson commented on what issues are relevant in reopening hearings:
[N]o matter who brings the reopening proceeding, neither party can raise original issues such as work connection, employee or employer status, occurrence of the compensable accident, and degree of disability at the time of the first award.
Arthur Larson, Larson’s Workers’ Compensation Law § 131.03(2)(b) (2005). In short, “the issue before the Board is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based.” Id. Our cases are consistent with that principle. As we noted in Kermmoade v. Quality Inn:
A settlement of a compensation claim which is properly approved per SDCL 62-7-5 operates as an adjudication of the facts agreed upon in the settlement including the employer’s obligation to pay compensation. [Citation omitted.] Thus, a matter may not be later reopened absent an express reservation of jurisdiction by Department or a change in the employee’s physical condition which change is a result of his working injury.
2000 SD 81, ¶ 19, 612 N.W.2d 583, 589 (quoting Larsen v. Sioux Falls Sch. Dist., 509 N.W.2d 703, 708 (S.D.1993)) (emphasis *13 added). See also Stender, 82 S.D. at 389, 145 N.W.2d at 915 (1996) (“On review of an award the inquiry then is limited as to whether disability resulting from the injury may have increased or diminished beyond what the award contemplated.”). In some cases, the award or agreement will state the claimant’s degree of disability. However, in cases such as this where there was no finding or agreement, the condition at the time of the settlement must be determined before it can be established the claimant has suffered a change in condition.
[¶ 39.] The agreement between the parties in this case acknowledges that McDowell was an employee of Citibank and that she suffered a compensable injury. The parties could not agree as to the degree of McDowell’s disability. Instead, the agreement set forth the range of impairment suffered by McDowell. According to Dr. Hoversten, McDowell had only a five percent impairment of her upper right extremity and was capable of returning to work on a full-time basis. McDowell’s treating physician, Dr. Schutt, gave McDowell a forty-five percent disability rating over her entire body and indicated she was not ready to return to work. Both opinions were incorporated into the agreement. Thus, the ALJ was required to examine all of the evidence and determine McDowell’s degree of disability at the time she entered into the agreement before determining her present degree of disability.
[¶40.] This was a compromise settlement agreement. Citibank’s position was that Claimant’s disability was limited to five percent and that the Claimant was able to return to work. The settlement was based more on that position than on Claimant’s and now Citibank wants to take advantage of Claimant’s allegation of permanent and total disability, which Citibank disputed and refused to accept. This is totally unfair and as suggested by Charles Dickens in Oliver Twist, if the law permits it, the “law is an ass....”[6]
[¶ 41.] Rather than focus on all of the evidence, including the opinions and impairment ratings set forth in the agreement, the ALJ made its ruling based on the testimony of McDowell and Ostrander, the vocational specialist. Both McDowell and Ostrander testified that she was unable to work prior to the settlement agreement. The ALJ concluded that McDowell’s testimony in this regard constituted admissions. Additionally, the ALJ held that McDowell was bound by her expert’s opinion. Thus, the ALJ concluded McDowell was not entitled to any additional disability benefits because she was totally and permanently disabled at the time she entered into the agreement.
[¶42.] Although we have held that a party is entitled to no better version of the facts than their own testimony, Frey v. Kouf, 484 N.W.2d 864, 869 (S.D.1992), the Supreme Court of Texas recognized:
An opinion that would conclusively admit that a[n][] injury has resulted in a total temporary, total permanent, or merely partial inability to work requires medical knowledge beyond that of the average lay person.
Mendoza v. Fid. & Guar. Ins., 606 S.W.2d 692, 695 (Tex.1980). Generally, this Court requires expert testimony before an ALJ may establish a disability rating. Caldivell v. John Morrell & Co., 489 N.W.2d 353, 362-63 (S.D.1992).
[¶ 43.] Therefore, the ALJ’s determination that McDowell’s claims and testimony and testimony of her vocational expert were dispositive or conclusive of this issue is one sided and flawed. Likewise, it would be improper for the ALJ to be overly persuaded by the position taken by the employer and insurer at the time of *14 the agreement, and thereby limit McDowell’s disability on that basis to a five percent impairment and that she was capable of returning to work on a full-time basis. Obviously, Claimant’s condition at the time of the contested agreement was somewhere between five percent and forty-five percent impairment.
[¶ 44.] The proper focus should be to examine all of the evidence, including the reports of Dr. Hoversten and Dr. Schutt, which were expressly incorporated into the agreement. A proper determination must be made, based on all those opinions and impairment ratings, as to McDowell’s degree of disability at the time she entered into the settlement agreement before determining whether she has suffered a change in condition. Whether her condition has diminished since then will be the next question. If McDowell can show a change in condition, the ALJ should then proceed under the final two factors in Ka-suske, 2006 SD 14, ¶17, 710 N.W.2d at 456. We should reverse and remand for the Department to make those findings.

. A change in condition that does not affect earning capacity but requires additional medical treatment may also be grounds for reopening a previous award. Larsen v. Sioux Falls School District, 509 N.W.2d 703, 708 (S.D.1993).

. Charles Dickens, Oliver Twist, 489 (1970) (First published serially 1837-1839).